*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 04a0419p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MARCUS A. NOBLE,

*Plaintiff-Appellee,*

*v.*

BRINKER INTERNATIONAL, INC.,

*Defendant-Appellant.*

No. 02-4190

>

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 00-00663—Algenon L. Marbley, District Judge.

Argued: April 20, 2004

Decided and Filed: December 3, 2004

Before: RYAN, DAUGHTREY, and CLAY, Circuit Judges.

---

## COUNSEL

**ARGUED:** Thomas L. Rosenberg, ULMER & BERNE, Columbus, Ohio, for Appellant. Laren E. Knoll, Columbus, Ohio, for Appellee. **ON BRIEF:** Thomas L. Rosenberg, Rebecca B. Jacobs, ULMER & BERNE, Columbus, Ohio, for Appellant. Laren E. Knoll, Dennis M. McGuire, Columbus, Ohio, for Appellee.

RYAN, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. CLAY, J. (pp. 13-17), delivered a separate dissenting opinion.

---

## OPINION

---

RYAN, Circuit Judge. In this civil rights case, the plaintiff, Marcus A. Noble, alleges that the defendant, Brinker International, Inc., acting by and through its agent, Anthony Ficorilli, terminated Noble's employment because of his race. After a jury found in favor of the plaintiff, the defendant filed a motion for judgment as a matter of law or, in the alternative, for a new trial. This motion was denied, and the defendant now appeals from the district court's denial of its motion.

The legal issue presented—whether the district court erred in denying the defendants' request for judgment as a matter of law—is relatively simple, but the answer is obtained, for reasons we shall explain, only by conducting a close examination of the facts of the case in order to determine whether they are legally sufficient to support the jury's finding of intentional race discrimination. Therefore, we must burden our opinion with an extensive discussion of those facts, which, as will be explained, do not support the

1

jury's verdict and should have resulted in a judgment for the defendant, as a matter of law. Therefore, we must reverse.

## I.

### A.

The defendant, Brinker International, is a holding company whose subsidiaries operate a number of concept restaurants throughout the country; one of these restaurants is Romano's Macaroni Grill in Worthington, Ohio. Noble, a black male, began working as a server at the Macaroni Grill on July 9, 1998. At that time, Linda Lawrence worked as the restaurant's general manager. Noble claims that Lawrence subjected him to disparate treatment in the terms and conditions of his employment during her tenure as general manager of the restaurant. Noble complained to Lawrence and others about what he perceived to be Lawrence's racial discrimination. Noble was permitted to introduce a significant amount of evidence at trial pertaining to Lawrence's allegedly discriminatory treatment of him and other minority employees.

In January 1999, however, Lawrence transferred out of the Worthington Macaroni Grill to a Macaroni Grill in Maine. Anthony Ficorilli replaced her as general manager of the restaurant. After Lawrence transferred out of Ohio, she and Ficorilli met once to discuss the restaurant. Both testified that they did not discuss Marcus Noble. Noble testified that "[t]hings were a lot better" after Ficorilli came to the restaurant. At trial, Noble testified that "99.9 percent" of the "threats and harassment" he experienced at the restaurant came from Lawrence. In his sworn deposition, also introduced at trial, Noble testified that no one but Lawrence subjected him to "threats and harassment." Noble never complained to Ficorilli or anyone else that any of the actions taken by Ficorilli prior to Noble's termination were taken on account of race.

On Thursday, April 15, or Friday, April 16, 1999, Ficorilli noticed that he had an evening shift that needed to be covered by a server that Saturday, April 17, 1999. Ficorilli claims that he asked Noble if he would be willing to cover the shift, and Noble agreed to do so. Ficorilli states that he confirmed the arrangement with Noble at least twice during their conversation. The alleged understanding between Ficorilli and Noble was not noted in the place in which such shifts are usually recorded, and Brinker was unable to produce any written record of the agreement. After Noble did not appear for work on Saturday and did not call to explain his absence, Ficorilli stated that he decided to discharge Noble for failing to appear for work or call on Saturday, April 17, 1999. An assistant manager testified that he mentioned Noble's prior claims of discrimination to Ficorilli "at the time that [Noble] had missed a shift . . . that he had agreed to work for Tony Ficorilli." Aside from the assistant manager's testimony that he made Ficorilli "aware that there was a history there," there was no evidence that Ficorilli was otherwise aware of the prior contentious history between Lawrence and Noble. When Noble attempted to return to work on Sunday, April 18, he was informed that he had been terminated for being a "no call/no show" the previous evening.

Noble, on the other hand, claims that he never agreed to cover a shift on Saturday, April 17, 1999. He contends that Ficorilli fabricated the incident to provide grounds for firing him. Noble argues that the real reason for his termination was his race.

### B.

Noble filed suit, alleging that both Lawrence's actions and Ficorilli's decision to terminate his employment violated 42 U.S.C. § 2000e-2(a)(1) (Title VII), 42 U.S.C. § 1981, Ohio Revised Code § 4112, and Ohio public policy. Brinker filed a motion for summary judgment, which the district court granted only as to Noble's Ohio public policy claim. The court denied Brinker's motion with respect to Noble's claims brought under the above-mentioned sections of state and federal law. Although denying Brinker's motion for summary judgment, the district court held that the only adverse employment action to which Noble had

been subjected was his termination. That is, the court held that the discriminatory treatment Noble allegedly suffered at the hands of Lawrence was not actionable.

The case proceeded to trial, but the district court dismissed the jury after it was unable to reach a unanimous verdict. The case again proceeded to trial, and Brinker moved for judgment as a matter of law at the end of the plaintiff's case-in-chief, again at the end of the defendant's case, and again at the close of all evidence. These motions were denied. The jury returned a verdict in favor of the plaintiff, and the district court entered judgment accordingly. Brinker filed a renewed motion for judgment as a matter of law or, in the alternative, for a new trial. The district court denied this motion as well, and Brinker now appeals.

## II.

We review a district court's denial of a motion for judgment as a matter of law or a renewed motion for judgment as a matter of law *de novo*. *United States v. Alpine Indus., Inc.*, 352 F.3d 1017, 1022 (6th Cir. 2003). "In doing so, we use the same standard of review used by the district court." *Id.* That is, judgment as a matter of law "may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001).

## III.

### A.

Title VII forbids an employer "to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

> The Ohio courts have held that the evidentiary standards and burdens of proof applicable to a claimed violation of Title VII . . . are likewise applicable in determining whether a violation of Ohio Rev. Code § 4112 has occurred. Thus, the federal case law governing Title VII actions is generally applicable to cases involving alleged violations of Chapter 4112.

*Williams v. Ford Motor Co.*, 187 F.3d 533, 538 (6th Cir. 1999). Finally, 42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcing of private contracts. *See* 42 U.S.C. § 1981. "The elements of [a] *prima facie* case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)).

### B.

Brinker argues that "[t]he district court erred in denying [the defendant's renewed] motion for judgment as a matter of law because there was no legally sufficient evidentiary basis for a reasonable jury to find for Noble on his claim of illegal discrimination." Among other things, Brinker argues that it was entitled to judgment as a matter of law because "Noble . . . failed to establish a *prima facie* case of discrimination and [did] not present[] evidence to support his claim that [the defendant] discharged him because of his race."

When entertaining a motion for judgment as a matter of law following a trial on the merits in a Title VII case, "'a reviewing court should not focus on the elements of the prima facie case but should assess the ultimate question of discrimination.'" *Gray*, 263 F.3d at 599 (quoting *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 821 (6th Cir. 2000)). The Supreme Court has explained:

when the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's [termination], the factfinder must then decide whether the [termination] was discriminatory within the meaning of Title VII. At this stage, the *McDonnell-Burdine* presumption "drops from the case," and "the factual inquiry proceeds to a new level of specificity."

*U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714-15 (1983) (footnote and internal citations omitted). That is, "the sole remaining issue [is] 'discrimination *vel non.*'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Aikens*, 460 U.S. at 714). Consequently, "we cannot simply hold that the plaintiff's failure to provide evidence of an essential element of [his] prima facie case is dispositive here. Rather, we must look to the ultimate question—whether the plaintiff has proven that [his] discharge was intentionally discriminatory." *Gray*, 263 F.3d at 599.

In this case, the district court denied Brinker's motion for summary judgment, holding, *inter alia*, that Noble had established a *prima facie* case of race discrimination with respect to his termination. *Noble v. Brinker Int'l, Inc.*, 175 F. Supp. 2d 1027, 1038 (S.D. Ohio 2001). As the district court was not persuaded to dismiss this suit for lack of a *prima facie* case, and as Brinker did "everything that would be required of [it] if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." *Aikens*, 460 U.S. at 715. Stated otherwise, we are not permitted to decide whether the district court erred in holding that Noble made out a *prima facie* case. Instead, our duty, given *Aikens*, is simply to determine whether Noble produced sufficient evidence to support the jury's finding of intentional discrimination. *See Gray*, 263 F.3d at 599; *Kovacevich*, 224 F.3d at 821.

## C.

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves*, 530 U.S. at 153; *see also Hicks*, 509 U.S. at 511; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Hicks*, 509 U.S. at 518 (quoting *Burdine*, 450 U. S. at 253). "'[The plaintiff] may succeed in this [*i.e.*, in persuading the court that she has been the victim of intentional discrimination] either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* at 517 (quoting *Burdine*, 450 U. S. at 256). With respect to the indirect method of proof, which is what is involved in this case, the Supreme Court has said that "[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 519 (emphasis in original). The Court explained that "Title VII does not award damages against employers who cannot prove a nondiscriminatory reason for adverse employment action, but only against employers who are proven to have taken adverse employment action by reason of (in the context of the present case) race." *Id.* at 523-24.

Nevertheless, disbelief of an employer's proffered reason may play an important role in a Title VII case that is proceeding under the indirect method of proof. In *Hicks*, the Supreme Court explained that "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Id.* at 511. The Supreme Court reiterated this standard in *Reeves*, holding that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. The Court explained that "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Id.* at 147. *Reeves* did not, however, abrogate the Court's

holding in *Hicks* that mere disbelief of an employer's proffered reason is insufficient to support a finding of intentional discrimination.

With these principles in mind, we turn to an examination of the evidence presented by Noble in support of his claim that he was discharged because of his race. "Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Id.* at 149 (citation omitted). If, in this case, there is no legally sufficient evidentiary basis for a reasonable jury to find that Noble was discharged because of his race, we must reverse.

**1.**

Noble presented a great deal of evidence at trial which, when viewed in the light most favorable to the plaintiff, tended to show that *Linda Lawrence* may have harbored racial animosity toward Noble and other black employees at the restaurant. Noble claimed that "[i]mmediately upon beginning work, [he] experienced discriminatory treatment from Ms. Lawrence." He presented evidence from which a jury might have concluded that Lawrence discriminated against him in the administration of an oral examination which tested the plaintiff's knowledge of the menu. He also presented evidence that may have shown that Lawrence unjustifiably harassed him concerning his work at another Brinker restaurant. Noble accused Lawrence of instructing a hostess not to seat patrons in his section because of his race. He alleged that Lawrence wrote him up for infractions, while she did not write up white employees for similar infractions. He further alleged that Lawrence wrote him up for infractions he did not commit. These write-ups eventually led to a suspension that Noble contends was motivated by racial animosity. Noble also presented evidence at trial from which a jury might have concluded that Lawrence otherwise harassed and threatened him on account of his race and treated other black employees in a discriminatory manner. In light of all of this evidence, it is hardly surprising the jury was persuaded to compensate Noble.

Nevertheless, there is a problem. "While this evidence might raise an inference of discrimination regarding plaintiff's treatment while employed, this is not the wrong for which plaintiff seeks recovery; *viz.*, discriminatory discharge . . . ." *Shah v. Gen. Elec. Co.*, 816 F.2d 264, 271 (6th Cir. 1987). As we have noted, the district court held that none of the above-mentioned actions resulted in an actionable "adverse employment action." Furthermore, Lawrence did not discharge Noble. In fact, she was no longer the manager at the time; she had not worked in that restaurant during the three months immediately preceding Noble's discharge; and she worked halfway across the country at the time of the discharge. Noble testified that Lawrence was the only person who discriminated against him on the basis of race during his tenure at the Worthington Macaroni Grill. Noble never complained to Ficorilli or anyone else that any of the actions taken by Ficorilli, aside from his presently contested discharge, were taken on account of his race. Furthermore, Noble produced no evidence that Ficorilli otherwise engaged in a pattern or practice of racial discrimination against minorities or anyone else. Instead, Noble seeks to impute the alleged racial animus of Lawrence, who was neither present nor a decisionmaker, to Ficorilli.

We must consider, therefore, whether Noble presented sufficient evidence to impute Lawrence's alleged racial animus to Ficorilli. *See, e.g.*, *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 876 (6th Cir. 2001); *Wilson v. Stroh Cos.*, 952 F.2d 942, 946 (6th Cir. 1992). Although we usually encounter the issue of imputation in the context of imputing the comments or actions of a subordinate to a manager or other decisionmaker, *see, e.g.*, *Christian*, 252 F.3d 862; *Wilson*, 952 F.2d 942, the same principles apply here, where Noble seeks to impute the alleged animus of one manager, Lawrence, to a succeeding manager, Ficorilli. In cases of this type, "[t]he determinative question is whether [the plaintiff] has submitted evidence that [a particular employee's] racial animus was a cause of the termination." *Wilson*, 952 F.2d at 946. In other words, a plaintiff must submit competent evidence that one employee's "discriminatory motives somehow influenced" the decisionmaker. *Id.*

Noble has presented no evidence from which a reasonable jury could impute Lawrence's alleged racial animus to Ficorilli. Noble cites cases in which courts have found an adequate nexus where the decisionmaker relied on the assessment or evaluation of a "tainted" employee. *See, e.g.*, *Christian*, 252 F.3d 862; *Shager v. Upjohn Co.*, 913 F.2d 398 (7th Cir. 1990). These cases are of no help to Noble, who presented no evidence that Ficorilli in any way relied on Lawrence's evaluations or opinions, or otherwise acted as Lawrence's "cat's-paw." *See Shager*, 913 F.3d at 405. The "cat's-paw" theory is simply inapplicable to the facts of this case.

Furthermore, Noble presented no evidence that Lawrence's alleged opinions or attitudes influenced Ficorilli's decision to terminate the plaintiff or otherwise caused the plaintiff's discharge. *See Wilson*, 952 F.2d at 946. Lawrence and Ficorilli never worked together, and they met only once. Noble presented no evidence showing that Lawrence and Ficorelli ever discussed Noble. In fact, the only evidence presented at trial shows that they did not. *Cf. Wells v. New Cherokee Corp.*, 58 F.3d 233, 237-38 (6th Cir. 1995). In *Wells*, we imputed a supervisor's animus to the ultimate decisionmaker because the evidence showed that the two "worked closely together and consulted with each other on personnel decisions. [They] themselves testified that they acted jointly." *Id.* at 238. There is no such evidence in this case. Nor is there any evidence that Lawrence had any role in Noble's termination, that she occupied any significant role in the corporate hierarchy, or that there was a direct temporal nexus between her allegedly discriminatory conduct and the adverse employment action. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998).

The evidence showed that Ficorelli may have learned of prior problems between Lawrence and Noble after Lawrence left. Noble argues that Ficorilli's mere knowledge of the contentious history between Lawrence and Noble "was enough to create an issue of 'causal nexus' that was properly submitted to the jury." We disagree. Ficorilli's mere knowledge of the conflict between Noble and Lawrence is insufficient as a matter of law to establish a causal nexus between Lawrence's alleged animosity toward Noble and Ficorilli's action. *See Wilson*, 952 F.2d at 946. Noble speculates that Lawrence's contaminated perception of him *must have* been transmitted to Ficorilli, and Ficorilli *must have* been contaminated by racism as well. Although Noble is certainly entitled to his opinion, mere speculation cannot satisfy his burden of proving that Ficorilli discharged him on account of race.

In short, Noble failed to present evidence that could establish a causal nexus between Lawrence's allegedly discriminatory treatment of Noble and Ficorilli's subsequent decision to terminate the plaintiff's employment. Unless the statements or conduct of nondecisionmakers can be imputed to the ultimate decisionmaker, such statements or conduct "'[can not] suffice to satisfy the plaintiff's burden . . .' of demonstrating animus." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring); *see also Cardenas v. AT&T Corp.*, 245 F.3d 994, 1000 (8th Cir. 2001). Accordingly, we hold that a reasonable jury could not have inferred racial discrimination on the part of Ficorilli based upon the allegedly discriminatory prior acts of Lawrence. But that does not end the matter.

**2.**

Aside from the evidence regarding Lawrence's alleged animus, Noble seeks to rely on the rule from *Reeves*, which he states as follows: "a prima *facie case* coupled with evidence that employers [sic] asserted justification is false may permit a trier of fact to conclude the employer unlawfully discriminated." The plaintiff argues that he has "clearly met his burden" under this standard. First, he argues that there was sufficient evidence to support the jury's rejection of the defendant's proffered reason for this discharge. Second, Noble argues that as there was sufficient evidence to support the jury's rejection of the defendant's proffered reason, the district court properly denied the defendant's motion for judgment as a matter of law. He offers two reasons why this is so. We shall address each of these arguments in turn.

**a.**

We have carefully examined the record, the briefs, and the parties' oral arguments, and we are satisfied that Noble presented sufficient evidence to permit a reasonable jury to reject the defendant's proffered reason for Noble's termination. We have "held that '[t]he jury may not reject an employer's explanation . . . unless there is a sufficient basis in the evidence for doing so.'" *Gray*, 263 F.3d at 600 (emphasis omitted) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994)). In this case, the parties vigorously dispute whether Noble was actually scheduled to work on Saturday, April 17, 1999. Noble argues that he did not agree to pick up the shift, while Ficorilli contends that he did. There was no written evidence confirming that Noble was, in fact, scheduled to work on that day. Consequently, the question whether the defendant's proffered reason had a basis in fact came down to a credibility determination between two witnesses. "Witness credibility is solely within the jury's province, and this court may not remake credibility determinations." *United States v. L.E. Cooke Co.*, 991 F.2d 336, 343 (6th Cir. 1993); *see also Wells*, 58 F.3d at 237. Accordingly, we conclude that a reasonable jury could have found that Brinker's proffered reason had no basis in fact, which is a sufficient ground for rejecting an employer's explanation. *See Gray*, 263 F.3d at 600.

**b.**

In light of *Reeves* and the sufficiency of the evidence supporting the jury's rejection of the defendant's proffered reason, Noble argues that we must affirm because we are "precluded from considering whether [he] proved his *prima facie* case." He argues that the district court's ruling that he had, in fact, made out a *prima facie* case is determinative; "[t]his was a preliminary matter, which cannot be revisited at a later time." Noble relies on the Supreme Court's holding in *Aikens*, as well as our holding in *EEOC v. Avery Dennison Corp.*,104 F.3d 858 (6th Cir. 1997). In *Aikens*, the Supreme Court stated that "when the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case," and when the case proceeds to a full trial on the merits, the district court is "in a position to decide the ultimate factual issue in the case," that is, "'[whether] the defendant intentionally discriminated against the plaintiff.'" 460 U.S. at 714-15 (quoting *Burdine*, 450 U.S. at 253). At that point, it is no longer material whether the plaintiff in fact properly made out a *prima facie* case. *Id.* at 715. "*Avery Dennison* stands for the simple proposition that in reviewing the facts of a discrimination claim after there has been a full trial on the merits, a district court or an appellate court must focus on the ultimate question of discrimination rather than on whether a plaintiff made out her prima facie case." *Kovacevich*, 224 F.3d at 825. The *Avery* court stated that "[f]ollowing a trial on the merits, [neither] the district court [nor this court], therefore, can[] return to a consideration of whether plaintiff has proven its *prima facie* case. This is a preliminary matter which cannot be revisited at a later time." 104 F.3d at 861. The *Avery* court further explained this point, stating: "The proper inquiry following the presentation of all evidence in a Title VII case is whether plaintiff has proven its case by a preponderance [of the evidence] . . . . At this stage in the case, the relevant inquiry should not be whether plaintiff has proven its *prima facie* case." *Id.* at 862. But that is not to say that the evidentiary underpinnings of a plaintiff's *prima facie* case are irrelevant or insulated from examination by this court to aid its determination whether the evidence *in toto* is sufficient to support a finding of intentional discrimination.

In *Reeves*, the Supreme Court held that, in appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." 530 U.S. at 148. Noble seeks to synthesize the holdings in *Aikens*, *Avery*, and *Reeves* as establishing a rule that once the trial court has ruled that a *prima facie* case has been shown and the case has proceeded to trial, the evidence introduced in support of the *prima facie* case "drops out of the picture," with the result that a plaintiff is immune from judgment as a matter of law so long as there is sufficient evidence to warrant the jury's rejection of the employer's proffered reason.

We reject Noble's reading of these cases because it is inconsistent with the Supreme Court's teachings. Noble's argument might have more force if it were not for the Supreme Court's holding in *Hicks*. As noted above, the Court held that it is not sufficient for a jury to merely disbelieve the reason offered by the defendant. *Hicks*, 509 U.S. at 519. "That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of race [discrimination] is correct." *Id.* at 524. Instead, the jury must *believe* the reason offered by the plaintiff, that is, it must believe that the plaintiff was the victim of intentional discrimination. *Id.* at 519. The Court stated that "proving the employer's reason false becomes part of (and often considerably assists) the *greater enterprise* of proving that the real reason was intentional discrimination." *Id.* at 517 (emphasis added). Nevertheless, Noble asks this court to hold that as we may not return to a consideration of whether a plaintiff has proven a *prima facie* case, we must affirm the district court's denial of the defendant's motion for judgment as a matter of law simply because there was sufficient evidence to support the jury's rejection of the defendant's proffered reason. Such a rule would cut the heart out of *Hicks*, and we are not free to do so.

Noble's argument must also be rejected because it is inconsistent with *Reeves* itself. In that case, a plaintiff in an age discrimination case obtained a favorable verdict from a jury. *Reeves*, 530 U.S. at 139. The district court denied the defendant's renewed motion for judgment as a matter of law (judgment notwithstanding the verdict), and the defendant appealed. *Id.* The Fifth Circuit reversed, holding that the plaintiff "had not introduced sufficient evidence to sustain the jury's finding of unlawful discrimination." *Id.* As in this case, the court of appeals "acknowledged that [the plaintiff] 'very well may' have offered sufficient evidence for 'a reasonable jury [to] have found that [the defendant's] explanation for its employment decision was pretextual.'" *Id.* (citation omitted). The Supreme Court stated that the Fifth Circuit had erred by "ignor[ing] the evidence supporting [the plaintiff's] prima facie case and challenging respondent's explanation for its decision." *Id.* at 146. It was error for the appellate court to demand *additional* evidence of discrimination from the plaintiff. *Id.*

Although it is not necessary for a plaintiff to introduce additional evidence of discrimination, *id.*, it is certainly permissible for a plaintiff to prove his case by doing so. For this reason, we undertook the above evaluation of the additional evidence Noble presented. Although Noble's failure to produce additional evidence is not, by itself, fatal to his claim, we must determine whether Noble satisfied the standard articulated in *Reeves*.

If the law were as Noble contends, *Reeves* would have held merely that sufficient evidence to find that an employer's asserted justification is false may permit the trier of fact to conclude that the employer unlawfully discriminated. The *Reeves* Court was well aware of its prior holding in *Aikens* and quoted extensively from it, but the Court nevertheless required that a plaintiff present *both* evidence supporting a *prima facie* case *and* evidence sufficient to support the factfinder's disbelief of the defendant's proffered reason. *Id.* at 148. In fact, the Court criticized the court of appeals for "ignor[ing] the evidence supporting [the plaintiff's] prima facie case." *Id.* at 146. The Court explained *Aikens*, stating "although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom.'" *Id.* at 143 (citations omitted). Likewise, in reviewing a Rule 50 motion, it is appropriate for a court to "consider the evidence establishing the plaintiff's prima facie case." *Id.* In *Reeves*, the Court reexamined each element of the plaintiff's *prima facie* case, stating "[i]t is undisputed that [the plaintiff] satisfied this burden here." *Id.* at 142. If *Aikens* stood for the proposition that an appellate court must always assume that there is evidence supporting what the lower court accepted as the plaintiff's *prima facie* case, the Supreme Court's reasoning and holding in *Reeves* would be inexplicable. *Aikens* and *Avery* make clear that a court may not, after a trial on the merits, grant judgment as a matter of law *merely because* the plaintiff failed to establish a *prima facie* case, but when the indirect method of proof is the only remaining avenue by which a plaintiff can establish his claim of intentional discrimination, it is necessary and appropriate for a court to evaluate the evidence supporting the plaintiff's *prima facie* case. In fact, the Supreme Court's criticism of the Fifth Circuit in *Reeves* demands as much. To hold as Noble requests

"would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50, and [the Supreme Court has] reiterated that trial courts should not '"treat discrimination differently from other ultimate questions of fact."'" *Reeves*, 530 U.S. at 148 (quoting *Hicks*, 509 U.S. at 524 (quoting *Aikens*, 460 U.S. at 716)).

Our conclusion is supported by the reasoning of this court and other courts. In *Kovacevich*, we reaffirmed *Avery* but explained: "Of course, there is nothing to prevent the court from considering evidence that also bears on that prima facie case as long as it does so in order to address the ultimate question of discrimination." 224 F.3d at 825; *see also Gray*, 263 F.3d at 600; *Roh v. Lakeshore Estates, Inc.*, 241 F.3d 491, 497-99 (6th Cir. 2001). In *Peters v. Lincoln Electric Co.*, 285 F.3d 456 (6th Cir. 2002), we stated: "An outcome consistent with *Reeves* is still dependent on [the plaintiff's] *prima facie* case *and* his showing by a preponderance of the evidence that [the defendant's] asserted reason was false." *Id.* at 473 (emphasis in original). In *Brown v. Packaging Corp. of America*, 338 F.3d 586 (6th Cir. 2003), we noted that, *Aikens* notwithstanding, the "elements of a *prima facie* case frequently are still relevant after the case has gone to the jury." *Id.* at 597 n.3 (Clay, J., writing separately for the court with respect to Part II.B of the opinion).

The Court of Appeals for the D.C. Circuit has explained:

> Of course, the case has been tried, so the question whether [the plaintiff] established a prima facie case is now irrelevant. This does not mean, however, that in our analysis of "the ultimate question of discrimination vel non," we are obliged to pretend that there is evidence supporting a prima facie case when in fact there is not. . . . Because that evidence standing alone has virtually no probative value, we conclude that the district court should have granted the [defendant's] motion for judgment as a matter of law.

*Barbour v. Browner*, 181 F.3d 1342, 1347 (D.C. Cir. 1999) (internal citations omitted). The Third Circuit has stated, citing *Aikens*, that when reviewing "evidence after a jury verdict, we do not concern ourselves with the *McDonnell Douglas* burden shifting analysis, but proceed to the ultimate issue of whether [the plaintiff] has proven [discrimination] by a preponderance of the evidence." *McNulty v. Citadel Broad. Co.*, Nos. 01-3902/4046, 2003 WL 500171, at *5 (3d Cir. Feb. 26, 2003) (unpublished disposition). Nevertheless, the court explained: "In so doing . . . our inquiry into the sufficiency of the evidence does not differ markedly from inquiring into whether [the plaintiff] has submitted evidence sufficient to establish the elements of a prima facie case and then sustained his burden of proving that [the defendant's] reasons were a mere pretext . . . ." *Id.*; *see also EEOC v. Bd. of Regents of Univ. of Wis. Sys.*, 288 F.3d 296, 301-02 (7th Cir. 2002); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997).

In light of *Reeves*, *Hicks*, and the other cases we have cited and discussed, we reject Noble's argument that this court must affirm a district court's denial of a motion for judgment as a matter of law whenever a plaintiff has presented sufficient evidence to support the jury's rejection of the defendant's proffered justification. At the risk of redundance, "[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Hicks*, 509 U.S. at 519. Accordingly, we must determine whether Noble presented sufficient evidence to permit a reasonable jury to "*believe* the plaintiff's explanation of intentional discrimination." *Id.*

**c.**

We have carefully examined the record, the parties' arguments, and the law, and we conclude that Noble failed to carry his burden of proof with respect to "the ultimate question of discrimination." As noted above, because this case has been tried on the merits, the question now before us is one of "discrimination vel non," not simply whether Noble failed to make out a *prima facie* case. *Aikens*, 460 U.S. at 714. Nevertheless, as in *Reeves*, we turn to an examination of the evidence supporting the elements of Noble's *prima facie* case because that alternative is the only remaining avenue by which Noble might raise the inference of discrimination necessary to sustain the jury's verdict.

Noble argues that he did, in fact, present sufficient evidence before the district court to support a *prima facie* case. It is undisputed that Noble introduced evidence to support the first three elements of his *prima facie* case; that is, (1) he was a member of a protected class; (2) he suffered an adverse employment action; and (3) he was qualified for the position from which he was discharged. *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002). A plaintiff may make out the fourth element of a *prima facie* case by showing that he was either replaced by someone outside the protected class or treated differently than similarly situated, non protected employees. *See Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003); *Clayton*, 281 F.3d at 610. Noble does not argue that he was replaced by someone outside the protected class; instead, he points out that "[i]n order to make his *prima facie* case, [he] offered Michael Brahler as a similarly-situated white employee . . . ." Noble also makes an oblique reference to "an employee named 'Will.'"

Absent proof that employees outside the protected class were similarly situated but were not discharged, Noble presented no evidence that could have permitted a reasonable jury to conclude that the defendant, acting by and through Ficorilli, intentionally discriminated against the plaintiff because of his race. For the following reasons, we conclude that Noble also failed to produce evidence showing that a similarly situated employee outside the protected class was not discharged.

**i.**

We have held that to be considered "similarly situated" in the disciplinary context, "the plaintiff must show that the 'comparables' are similarly-situated *in all respects*." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis in original). In later cases, we clarified that "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar[, that is, 'nearly identical,'] in 'all of the *relevant* aspects.'" *Ercegovich*, 154 F.3d at 352 (emphasis in original) (citation omitted).

> Thus, to be deemed "similarly-situated", [sic] the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell*, 964 F.2d at 583.

**ii.**

Applying the above standard to this case, it is evident that Noble failed to identify a similarly situated employee outside the protected class who was treated more favorably than he. The two employees to whom Noble seeks to compare himself differ from him in several significant ways.

First, Noble seeks to compare himself to Michael Brahler. Brahler, a white male, also worked under Ficorilli at the Macaroni Grill. Noble argues that he is similarly situated to Brahler because both employees allegedly missed shifts and failed to call, that is, both employees were "no call/no shows." Noble contends that the evidence presented at trial showed "that Mr. Brahler failed to appear for over one week to any of his shifts, and was not terminated until after he had missed a full week of work." Noble, on the other hand, was terminated after allegedly missing only a single shift. Thus, Noble concludes that he has shown that he was treated less favorably than a similarly situated white employee.

Although we are required to view the evidence in the record in the light most favorable to the non-moving party, Noble, we are not required to accept his unsubstantiated gloss on the evidence. The record reveals two instances in which Brahler failed to appear for work. In the first instance, Brahler's "car broke down on the highway." He "called in and . . . told [the manager] the story and . . . when [he] got everything situated and [he] called them back, they said don't bother to come in. It's slow." Brahler was later required

"to show a little proof of . . . an estimate for [his] car; that it was actually broke[n] . . . [to] make sure [he] wasn't lying." Brahler called in to the restaurant and informed his manager that he would be unable to make his shift; Noble did not. Brahler's first failure to appear for a scheduled shift is marked by "such differentiating or mitigating circumstances" that would clearly distinguish Brahler's conduct from Noble's and would explain Brinker's differing treatment of the employees under these differing and relevant circumstances. *See Mitchell*, 964 F.2d at 583.

As for the second instance, Brahler failed to appear for work after he gave the restaurant one week's notice that he was leaving to take another job. Ficorilli testified that "Mr. Brahler did not show for his shift. We did not see [him again] after he did not show . . . . So he would have been terminated." Although Ficorilli testified that Brahler was terminated for his failure to appear during this week, the trial judge pressed to determine whether Ficorilli had *personally* terminated Brahler. The trial judge established through questioning that Ficorilli neither called Brahler to tell him that he was fired, nor did he write him a letter to this effect, nor did he "communicate in any way with Mr. Brahler [to] tell him that he was fired." Nevertheless, Ficorilli testified, in response to the judge's line of questions, that if Brahler had attempted to return to work after these missed shifts, Ficorilli "would [not] have allowed him to [do so]." The trial judge accorded great significance to the fact that Ficorilli did not personally contact Brahler to inform him of his termination, and the trial judge denied the defendant's in-court motion for judgment as a matter of law accordingly. Similarly, Noble places great emphasis on this fact, claiming that Ficorilli's failure to take affirmative action to communicate the fact of termination to Brahler establishes that "Brahler was not terminated" for similar wrongdoing.

Noble argues that he established relevant similarity because the fact of termination was communicated to him after he allegedly missed a shift, while the fact of termination was not communicated to Brahler, a white server, under like conditions. Noble's argument is unpersuasive because it overlooks the significantly differing circumstances that distinguish Brahler's case from Noble's. Noble makes much of the fact that Ficorilli did not call or write Brahler to let him know he was not free to return to work, but Noble presented no evidence that Ficorilli called or wrote him to communicate a similar fact. Instead, the only evidence regarding any communication of any discharge decision was the evidence showing that Noble was informed *at the restaurant*, when he *attempted to return to work* after allegedly missing a shift, that he had been terminated. Noble presented no evidence showing that Brahler was permitted to return to work after missing his shift(s), that Brahler attempted to return to work after missing his shift(s), or that Brahler would have been permitted to return after missing his shift(s). In fact, the only evidence introduced on this point was that Brahler would *not* have been permitted to return to work had he tried. The fact that Ficorilli did not go out of his way to inform Brahler, who had already given his notice, that he would not be permitted to return to work in the few short days he may have had left hardly establishes relevant similarity when Noble has presented *no evidence* that Ficorilli took similar extraordinary measures with respect to the plaintiff. We cannot fault a manager for failing to take unusual, pointless, and arguably vindictive measures against an employee who had clearly manifested his intention to terminate his employment. Surely managers in America's bustling restaurants and diners have more pressing matters at hand than tracking down employees who have already resigned for the visceral satisfaction of uttering the expression: "You're fired!" Nor can we hold that the relevant circumstances surrounding Brahler's termination for failing to appear for his shift(s) are "nearly identical" to those surrounding Noble's termination for allegedly failing to appear for a shift. *See Ercegovich*, 154 F.3d at 352. In fact, they are not even close. We conclude that Noble failed to present evidence showing that Brahler was a similarly situated white employee who was treated more favorably than he.

Second, Noble points to "an employee named 'Will' who [allegedly] did not show up for his shifts in over a week." Noble claims that "Will" too was a "similarly situated" employee who was not terminated. He bases his argument upon the following notation in a manager's book: "Will is no longer working for us. He has not showed [sic] for a shift in over a week." Noble failed to produce any other evidence about "Will" that would permit a rational factfinder to conclude that "Will" was a similarly situated employee outside the protected class who was treated more favorably than was the plaintiff. Noble produced no

evidence as to "Will's" position, whether "Will" was outside the protected class, whether "Will" attempted to return to work after his or her missed shift(s), or any other facts that might have shown that "Will" was a similarly situated employee. In fact, the only evidence introduced about "Will" was that he or she simply stopped coming to work. Noble utterly failed to show that "Will" was a similarly situated employee outside the protected class or that he or she was treated more favorably than was Noble.

Finally, Noble's invocation of the testimony of an assistant manager "that in his experience an employee would not be terminated for a first offense violation of the 'no call/no show' policy" is of no avail. It is the plaintiff's burden to establish that a similarly situated person outside the protected class was treated more favorably than he. *See Mitchell*, 964 F.2d at 583. Noble had the benefit of full discovery, but at trial he was unable to produce a single person who fit this description. Generalized allegations unsupported by evidence are insufficient to meet the plaintiff's burden. Noble simply failed to present any evidence of a similarly situated individual outside the protected class who was treated more favorably than he.

Our conclusion that Noble failed to produce evidence at trial to support a *prima facie* case of discrimination is significant because it takes Noble outside the scope of the rule applied in *Reeves*. As noted above, that case held that evidence supporting a plaintiff's *prima facie* case, together with sufficient evidence to permit the jury to conclude "that the employer's asserted justification is false," may permit a factfinder to find for the plaintiff. *Reeves*, 530 U.S. at 148. That holding is inapplicable to the facts of this case because Noble failed to present evidence to support a *prima facie* case. Furthermore, even if we were to assume the existence of a *prima facie* case within the meaning of *Reeves*, that case would not mandate affirmance as Noble contends. The *Reeves* Court was careful to make clear that there is no magic formula that will always guarantee victory to a party in an employment discrimination case. Instead, a discrimination case is subject to Rule 50 review in the same manner as any other case. *Id.* at 148. The Court clearly stated that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false" will not "*always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.* at 148; *see also Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 461 (6th Cir. 2004), *petition for cert. filed*, (U.S. May 27, 2004). Based on the above review of the evidence, we conclude that this is such a case.

The district court should have granted the defendant's motion for judgment as a matter of law, not because Noble failed to make out a *prima facie* case, an issue we do not decide, but because he failed to produce sufficient evidence to support an inference of intentional race discrimination. Let there be no mistake: Noble's problem is not that he failed to make a showing sufficient to get to trial. *Aikens* and *Avery* teach that this determination was for the district court, and we are not to revisit it on appeal. Instead, our focus is on "the ultimate question of discrimination," and Noble's problem is that he failed to prove his case at trial. Noble bore the burden of proving "*both* that the [defendant's proffered] reason was false, *and* that discrimination was the real reason" for the adverse employment action. *Hicks*, 509 U.S. at 515 (emphasis in original). Noble simply failed to produce sufficient evidence from which a rational jury could conclude that racial discrimination was the real reason for his termination.

## IV.

"Although we are always hesitant to overturn a jury verdict," *Gray*, 263 F.3d at 602, we hold that the district court erred as a matter of law in denying Brinker's motion for judgment as a matter of law. The evidence in the record is insufficient to permit a rational jury, even if it chose to disbelieve the defendant's proffered reason for discharging Noble, to conclude that the true reason for the discharge was racial discrimination. Accordingly, the judgment of the district court is **REVERSED**.

---

### DISSENT

---

CLAY, Circuit Judge, dissenting. The majority acknowledges that the jury reasonably could have found that Plaintiff Marcus Noble's former restaurant manager, Linda Lawrence, discriminated against him because of his race. The majority further acknowledges that Noble submitted evidence showing that Noble's complaints about Lawrence's discriminatory treatment were conveyed to manager Anthony Ficorilli at the time Ficorilli decided to terminate Noble for purportedly failing to show up for a shift on April 17, 1999. The majority further acknowledges that the jury reasonably could have found that Ficorilli fabricated his reason for terminating Noble because Noble never agreed to work the April 17, 1999 shift. Nevertheless, the majority holds that no reasonable jury could have found that Ficorilli acted upon Lawrence's racial animus when he terminated Noble for a contrived reason. Instead, the majority substitutes its own inferences from the facts to eviscerate the jury's verdict for Noble. Because the majority has usurped the jury's role as the ultimate finder of fact, I respectfully dissent.

### I.
### *Facts*

Noble, an African-American, worked as a server at the Romano's Macaroni Grill in Worthington, Ohio from June, 1998, until his termination on April 18, 1999. Defendant Brinker International, Inc. operates Macaroni Grill restaurants. Noble initially reported to general manager Linda Lawrence and Jeanne Osborne, the service manager. Osborne left the Macaroni Grill in the fall of 1998, and thereafter Tim Wiseman became the service manager. In January, 1999, general manager Lawrence transferred to a Macaroni Grill restaurant in Maine.

At trial, Noble submitted evidence that, prior to Lawrence's departure in early 1999, she subjected him to numerous acts of racial discrimination, including the following: (1) before Noble could begin serving and earning tips, Lawrence, on at least eight occasions, forced him (as well as another unnamed black employee) to repeat an hour-and-twenty-minute oral examination about the restaurant's menu because Lawrence kept failing him (Noble passed the oral exam when he arranged for Osborne to administer the exam, which took about 15 to 20 minutes); (2) Lawrence prevented the hostesses from seating guests at Noble's tables purportedly because he was not providing adequate service; (3) Lawrence "harassed" Noble about not providing his correct social security number on his employment application and for failing to indicate that he was working at a Chili's, another Brinker-operated restaurant (Noble previously had advised an assistant manager of his employment at Chili's and claimed that the incorrect social security number, which was off by one digit, was an inadvertent mistake); and (4) Lawrence suspended Noble for two weeks after she gave him three separate disciplinary write-ups on a single night for incidents that allegedly were precipitated by customer complaints about his service.

In addition, a former restaurant employee testified that she had heard Lawrence and two chefs laughing about black people and stating that black people "might not know much." A former dishwasher who had worked under Lawrence testified that Lawrence made him shovel the snow and sweep the sidewalk, limited the areas in which he could take a smoke break, limited his ability to switch shifts, denied him free lunches, and denied him overtime pay, whereas white employees were not denied free lunches and were not limited as to where they could smoke. As noted by the majority, "Noble presented a great deal of evidence at trial which, when viewed in the light most favorable to the plaintiff, tended to show that Linda Lawrence may have harbored racial animosity toward Noble and other black employees at the restaurant." *Maj. Op.* at 5 (emphasis omitted).

After Lawrence moved to Maine in January, 1999, Anthony Ficorilli became the general manager of the Worthington Macaroni Grill. Ficorilli and Lawrence met once after Ficorilli started working as the general manager, but they claim that they did not discuss Noble.

According to Ficorilli, on either April 15 or 16, 1999, Noble agreed to work a shift on April 17, but Noble did not show for the shift, nor did he call in to provide an excuse for not showing up. On April 18, 1999, Ficorilli instructed the assistant manager to terminate Noble, pursuant to the restaurant's policy that an employee who violates the "no call/no show policy" can be terminated. Noble, however, denies ever agreeing to work the April 17, 1999 shift. He claims that, on April 16, 1999, he had provided a written medical excuse to be off work from April 14 to 19, 1999. He further claims that he gave a note from his physician to the service manager, Tim Wiseman, and Wiseman testified that he recalled receiving a medical excuse from Noble prior to April 17, 1999. Consistent with this testimony, there is no document demonstrating that Noble agreed to pick up the April 17, 1999 shift, despite other testimony concerning the restaurant's three separate systems – the manager's "Red Book," a "shift pickup book," and a computerized schedule – for documenting changes or additions to shifts. Further, former service manager Jeanne Osborne testified that it would not be appropriate to terminate an employee who had violated the no call/no show policy without some form of documentation that the employee had agreed to work the shift, such as a notation in the manager's Red Book.

## II.
### *Analysis*

On review of a Rule 50 motion for judgment as a matter of law we are required to consider all the evidence in the record, including those facts that are in dispute, in the light most favorable to the nonmoving party (here, Noble), giving him the benefit of all reasonable inferences. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000). Based on the above-described facts, a reasonable jury was permitted to infer that Noble did not in fact violate the no call/no show policy as Ficorilli claims. Indeed, the majority acknowledges this point. *Maj. Op.* at 7.

The jury reasonably could have inferred that Noble never agreed to cover the April 17, 1999 shift based on (a) Noble's testimony that he had provided service manager Wiseman with a medical excuse to be off work from April 14 to 19, 1999; (b) Wiseman's testimony that he recalled receiving a medical excuse from Noble prior to April 17, 1999; and (c) the absence of any documentary evidence that Noble had agreed to work on April 17, 1999, even though the restaurant had three separate systems for recording shift changes and even though Noble's former service manager testified that it would be inappropriate to terminate an employee under the no call/no show policy without documentation. Because the jury was permitted to infer that Noble did not in fact violate the no call/no show policy, it further could have reasonably inferred that Ficorilli's articulated reason for terminating Noble (violating the policy) was a lie or a pretext to cover-up some other reason. The central question is whether the evidence of Ficorilli's mendacity, combined with any other evidence in the record, permitted the jury to find that Ficorilli's reason was a pretext for race discrimination.

In *Reeves*, *supra*, the Supreme Court discussed the application of Rule 50 to employment discrimination cases and held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. The Court announced this rule because, in general, "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Id.* at 148; *see also id.* at 154 (Ginsburg, J., concurring) ("Under this commonsense principle, evidence suggesting that a defendant accused of illegal discrimination has chosen to give a false explanation for its actions gives rise to a rational inference that the defendant could be masking its actual, illegal motivation."); *id.* at 154-55 (noting that it would be "atypical" to grant judgment as a matter of law

where the plaintiff has submitted evidence establishing a *prima facie* case and that the employer's proffered explanation for its action was false).

The *Reeves* decision teaches us that the district court correctly denied Brinker's motion for judgment as a matter of law so long as Noble submitted evidence to the jury that was sufficient to demonstrate his *prima facie* case and that Ficorilli's proffered explanation for terminating him was false. Noble was fired, so the elements of his *prima facie* case were: (1) he is a member of a protected class, (2) he was qualified for his job and did it satisfactorily, (3) despite his qualifications and performance, he suffered an adverse employment action, and (4) he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class. *Cicero v. Borg-Warner Automotive, Inc.,* 280 F.3d 579, 583 (6th Cir. 2002) (citing *McDonnell Douglas v. Green,* 411 U.S. 792, 802 (1973); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992)). It is undisputed that Noble submitted sufficient evidence to prove the first three elements of his *prima facie* case. Thus, the question is whether Noble submitted evidence establishing that he was replaced by a non-black employee or was treated less favorably than a similarly situated non-black employee.

Noble has neither argued nor pointed to any evidence that he was replaced by a non-black employee after his termination. Instead, Noble argues that, whereas Brinker immediately terminated him for failing to show up for a shift on April 17, 1999 and failing to call to say that he would miss the shift, a similarly-situated white server, Michael Brahler, was not terminated under similar circumstances. Like Noble, Brahler worked for Anthony Ficorilli, the general manager of the restaurant who claims that he strictly enforces the no call/no show policy. Noble argues that Brahler violated the no call/no show policy by failing to appear for any of his shifts over a one week period, but was not terminated until after he had missed a full week of shifts.

The record is unclear regarding whether Ficorilli waited to terminate Brahler until he committed several violations of the no call/no show policy compared to Ficorilli's termination of Noble after a single violation. Other evidence suggests that Ficorilli did not rigorously enforce a zero tolerance approach.[1] In any event, the real issue is whether Ficorilli should have applied the no call/no show policy to Noble in the first place. As discussed above, the jury reasonably could have found that Ficorilli's assertion that Noble had violated the policy was a lie. It follows that the jury reasonably could have found that Ficorilli's purported "equal" treatment of Noble and Brahler – i.e., not permitting either employee to return to work after violating the no call/no show policy – was not equal at all because Noble never should have been subjected to that policy; he never violated it. Ficorilli fabricated the very premise that ostensibly justified his application of the no call/no show policy to Noble.

A proper comparison between Ficorilli's treatment of Noble and Brahler demonstrates that he did not treat them equally. Whereas Ficorilli terminated Brahler for violating the no call/no show policy after Brahler actually violated that policy, Ficorilli terminated Noble for violating the policy even though Ficorilli knew (or so the jury could have found) that Noble had not violated it. This is the quintessence of disparate treatment and certainly was sufficient to demonstrate the fourth element of Noble's minimal burden to produce evidence demonstrating his *prima facie* case. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("The burden of establishing a prima facie case of disparate treatment is not onerous."). Because Noble submitted evidence sufficient to demonstrate all elements of his *prima facie* case, as well as sufficient evidence to find that Ficorilli's asserted justification for his termination is false, the jury was permitted to conclude that Brinker unlawfully discriminated against him because of his race. *Reeves*, 530 U.S. at 147. The majority's decision to the contrary is flatly wrong.

---

[1] Noble cites to a July, 1999 notation in Ficorilli's manager's notebook stating, "Will is no longer working for us. He has not showed for a shift in over a week." This evidence tends to show that Ficorilli did not immediately terminate employees who violated the "no call/no show rule," undermining Ficorilli's assertion that he rigorously and consistently enforced the no call/no show policy.

Moreover, Noble presented other circumstantial evidence that raised an inference of discrimination and, therefore, was sufficient to satisfy the fourth element of his *prima facie* case. *See McDonnell Douglas*, 411 U.S. at 802 n.13 ("The facts necessarily will vary in Title VII cases, and the specification … of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."); *Lyons v. England*, 307 F.3d 1092, 1114 (9th Cir. 2002) ("For the purpose of establishing a *prima facie* case, the plaintiff is not restricted to providing the bare minimum of evidence required by the *McDonnell Douglas* test, but may rely also on other circumstantial evidence that tends to raise an inference of discrimination.") (citing *McDonnell Douglas, supra*). That same evidence also was sufficient for the jury to find that Noble was terminated because of his race. Specifically, Noble presented evidence directly linking his former manager Lawrence's racial animus to Ficorilli's decision to discharge him.

Service manager Wiseman, who worked for both Lawrence and Ficorilli, testified that Noble told him that Lawrence had been discriminating against him because of his race and that he intended to file suit. Wiseman further testified that he passed Noble's comments on to Lawrence before she transferred to another restaurant. Wiseman also testified that, "at the time that [Noble] had missed a shift," Wiseman told Ficorilli that Noble had "threatened to go to both the NAACP and the labor board and report racial discrimination or accuse [them] of racial discrimination." In other words, contemporaneous with Noble's alleged no call/no show on April 17, 1999, Ficorilli was apprised that Noble had complained about race discrimination by his former manager and that he was prepared to take legal action. The very next day, Ficorilli terminated Noble.[2]

As noted above and by the majority, there was ample evidence from which the jury reasonably could have inferred that Ficorilli did not fire Noble for his purported violation of the no call/no show policy. Therefore, if Ficorilli was not motivated by Noble's alleged no call/no show, the jury reasonably could have inferred that the true motivating factor for the termination was the new information Wiseman had presented to Ficorilli only a day before the termination, namely, that Noble believed that Lawrence had discriminated against him because of his race. But for Lawrence's racial animus toward Noble, (a) Noble would not have informed Wiseman of Lawrence's discriminatory acts, (b) Wiseman would not have informed Ficorilli on or about April 17, 1999 that Noble believed that Lawrence had discriminated against him and might take legal action, and (c) Ficorilli would not have been motivated to fabricate Noble's purported violation of the no call/no show policy to avoid a potential lawsuit. In this way, there was a direct causal nexus between Lawrence's racially discriminatory actions against Noble and Ficorilli's decision to terminate him.

An employer is not entitled to judgment as a matter of law if the plaintiff has submitted evidence that a non-decisionmaker's discriminatory motives "somehow influenced" or "affected" the decision-maker. *Wilson v. Stroh Cos., Inc.*, 952 F.2d 942, 946 (6th Cir. 1992) (affirming summary judgment for employer because the plaintiff failed to submit evidence that his supervisor's racial animus had somehow influenced or affected the decision of two other managers to terminate him; the managers' decision was based on an independent investigation of the plaintiff's conduct); *see also Dey, supra*, 28 F.3d at 1459 ("Summary judgment generally is improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action.") (citations omitted); *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990) (holding that summary judgment was improper even though the committee that formally terminated the plaintiff harbored no

---

[2]There also was evidence suggesting that Ficorilli may have known of Noble's concerns about race discrimination months earlier. Although Ficorilli and Lawrence claim that they never discussed Noble on the one occasion when the two managers met, it was for the jury to determine the veracity of this claim, particularly because both Ficorilli's and Lawrence's credibility was undermined at trial. Based on the totality of the evidence, it would have been reasonable to infer that Lawrence, who harbored racial animus toward Noble, informed Ficorilli of Noble's prior complaints of race discrimination in order to negatively impact Noble's employment under Ficorilli. *Cf. Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1458-59 (7th Cir. 1994) (holding that the court must assume on summary judgment that the non-decisionmaker/harasser relayed the plaintiff's complaints about sexual harassment to the decision-maker, even though both the harasser and the decisionmaker denied this fact; the harasser was present at the meeting in which it was decided that plaintiff would be terminated, he had an incentive to pass on this information, and his credibility was in question as to other matters).

discriminatory animus; the plaintiff's manager, who harbored animus, had tainted the committee's decision by characterizing the plaintiff as a poor performer, thereby rendering the committee a "conduit" of his prejudice).

There is no question that there was sufficient evidence for the jury to conclude that Lawrence's discriminatory animus somehow influenced Ficorilli's termination decision. Because the jury was permitted to reject Ficorilli's fabricated reason as the cause of Noble's termination, it was entitled to infer that the true cause was the discriminatory animus of Noble's former manager of which Ficorilli had just been apprised by Wiseman. Indeed, there appears to be no other explanation for Ficorilli's fabrication.

There is no doubt that legal liability may attach to Brinker as a result of the actions of Lawrence and Ficorilli. The Supreme Court has held that "a tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998). Thus, "it would be implausible to interpret agency principles to allow an employer to escape liability" when a supervisor subjects an employee to the tangible employment action of termination. *Id.* at 761, 763. When, as herein, a reasonable jury could find that a supervisor not only acted as a conduit for a former's supervisor's discriminatory animus, but also knowingly based his termination decision on that animus, the employer is unquestionably subject to vicarious liability. For these reasons, there is absolutely no basis for the majority to hold that Brinker is entitled to judgment as a matter of law.

## III.
### *Conclusion*

For all the foregoing reasons, I would affirm the judgment below.