*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0449P (6th Cir.)
File Name: 03a0449p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

No. 01-5759

ALPINE INDUSTRIES, INC. and
WILLIAM J. CONVERSE,
*Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 97-00509—Dennis H. Inman, Magistrate Judge.

Argued: December 4, 2002

Decided and Filed: September 26, 2003[*]

Before: BOGGS, Chief Judge; GUY, Circuit Judge; and
EDMUNDS, District Judge.[**]

———————————

[*] This decision was originally issued as an "unpublished decision" filed on September 26, 2003. On December 4, 2003, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

———————————

## COUNSEL

**ARGUED:** J. Ronnie Greer, Greeneville, Tennessee, for Appellants. Peter R. Maier, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** J. Ronnie Greer, Greeneville, Tennessee, William A. Erhart, Gregory B. Davis, ERHART & ASSOCIATES, Anoka, Minnesota, for Appellants. Peter R. Maier, Douglas N. Letter, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

———————————

## OPINION

———————————

BOGGS, Chief Judge. Alpine Industries, Inc. and William J. Converse, Alpine's President and Chief Executive Officer, (collectively referred to as Alpine) appeal a judgment against the company in an enforcement action brought by the government for violating a Federal Trade Commission Consent Order (the Consent Order). The Consent Order forbade the company, an organization engaged in marketing and distributing air-cleaning devices, from making product claims without the support of competent and reliable scientific evidence. The case was bifurcated into a liability phase, which was tried in front of a jury in the fall of 1999, and a remedy phase, which was tried by the court in January 2001. In November 1999, the jury found that Alpine had violated the Consent Order. In particular, the jury found that Alpine had advertised that its air cleaning products removed over 60 separately titled but in many cases overlapping

categories of indoor air pollutants,[1] controlled ambient ozone levels, and produced various health benefits, without competent and reliable scientific evidence to support these claims. However, the jury also found that Alpine's product claims regarding the ability of its air cleaning products to remove smoke, tobacco smoke, and cigarette smoke, *were* supported by competent and reliable scientific evidence. The district court's final judgment against Alpine was entered in April 2001 and included, in addition to injunctive relief, an award of $1,490,000 in civil penalties.

Following the district court's final judgment, Alpine filed motions to amend the district court's judgment, for JNOV, or for a new trial. The district court denied these motions. Alpine appeals the district court's denials of its motions to amend the judgment and for JNOV, arguing that the government did not present sufficient evidence to support the jury's findings. Alpine also appeals the district court's denial of its motion for a new trial, arguing that the jury's verdict is internally inconsistent and that the special verdict form was worded in such a way as to place the burden of proof improperly on Alpine instead of the government. Alpine additionally argues that it was entitled to seek judicial reformation of the underlying Consent Order on the grounds of mutual mistake and that it was prejudiced by the district court's exclusion of parol evidence surrounding the Consent

---

[1] Styrene, Benzene, Dust Mites, Bacteria, Allergens, Formaldehyde, Dust, Pollens, Mold Spores, Chemical Gases, Particulates, Mildew, Legionella, Dry Cleaning Chemicals, Skin Flakes, Dust Mite Feces, Yeast, Fungi, Gases, Chemical Fumes, Mold, Germs, Cleaning Product Fumes, Dead Skin, Microbiological Growth, Skin, Hair, Chemicals, Dried-up Rat Urine, Microbiological Organisms, Dried-up Mouse Urine, Streptococcus, Staphylococcus, Aspergillus Fungus, Salmonella, Cockroach Eggs, Cat Dandruff, Asbestos, Rat Urine, Legionella, Solid Particulate, Microorganisms, Microbials, Volatile Organic Chemicals, Organic Gases, Cat Dander, Viruses, Dry Cleaning Fluids, Pieces of Insects, Microbes, Dirt, Dander, E-coli, Gas Contaminants, Car Fumes, Candida Yeast, Disinfectant Fumes, Cockroach Pieces, Animal Dander, Traffic Fumes, Smog, Cockroach Feces, Pencillium, and Tuberculosis.

Order. Finally, Alpine argues that the injunctive relief embodied in the Permanent Injunction issued by the district court, intended to prevent further representations by Alpine regarding the efficacy of its air-cleaning machines without competent and reliable scientific evidence, does not accurately reflect the jury's verdict and that furthermore, the penalty imposed by the district court against Alpine is excessive. For the reasons that follow, we affirm the district court's judgment.

**I**

In the early 1990's, the FTC conducted an investigation of claims made by Alpine in promoting, advertising, and selling its air-cleaning machines. The investigation concluded when Alpine agreed to an FTC Consent Order, effective October 2, 1995, which reads in relevant part:

For the purposes of this Order, the following definitions shall apply:

A. The term "air cleaning product" shall mean any product, equipment, or appliance designed or advertised to remove, treat, or reduce the level of any pollutant(s) in the air.

B. The terms "indoor air pollutant(s)" or "pollutant(s)" shall mean one or more of the following: formaldehyde, sulfur dioxide, ammonia, trichlorethylene, benzene, chloroform, carbon tetrachloride, odors, nitrogen dioxide, mold, mildew, bacteria, dust, cigarette smoke, pollen, and hydrocarbons, or any other gaseous or particulate matter found in indoor air.

. . .

I

IT IS ORDERED that [Alpine] in connection with the manufacturing, labelling, advertising, promotion, offering for sale, sale, or distribution of any air cleaning product . . . do forthwith cease and desist from representing, in any manner, directly or by implication,

A. such product's ability to eliminate, remove, clear, or clean any indoor air pollutant from a user's environment; or

B. such product's ability to eliminate, remove, clear, or clean any quantity of indoor air pollutants from a user's environment;

II

IT IS FURTHER ORDERED that [Alpine] in connection with the manufacturing, belling, advertising, promotion, offering for sale, sale, or distribution of any air cleaning product . . . do forthwith cease and desist from representing, in any manner, directly or by implication, that:

A. The use of ozone is more effective in cleaning or purifying indoor air than other air cleaning methods;

B. The product does not create harmful by-products; or

C. When used as directed, the product prevents or provides relief from any medical or health-related condition;

unless at the time of making such representation, respondents possess and rely upon competent and reliable scientific evidence that substantiates the representation.

III

IT IS FURTHER ORDERED that [Alpine] in connection with the manufacturing, labelling, advertising, promotion, offering for sale, sale, or distribution of any air cleaning product . . . do forthwith cease and desist from representing, in any manner, directly or by implication, the efficacy, performance, or health-related benefit of any such product, unless, at the time of making such representation, respondents possess and rely upon competent and reliable evidence, which when appropriate must be competent and reliable scientific evidence, that substantiates the representation.

. . . .

On December 30, 1997, the government initiated an action alleging violations of the Consent Order, requesting injunctive relief, consumer redress, and civil penalties against Alpine. Alpine requested a jury trial, which the district court granted with respect to the issue of liability for civil penalties. On November 1, 1999, after a fourteen-day trial, the jury filled out a special-verdict form containing over 900 questions. The jury found that in all cases but smoke, tobacco smoke, and cigarette smoke, Alpine's claims were not supported by competent and reliable scientific evidence.

## II

### *Directed Verdict / JNOV*

Alpine moved for a directed verdict at the conclusion of the government's case in chief and again at the close of evidence, and later moved for a judgment notwithstanding the verdict. We review the district court's denial of Alpine's motions for judgment as a matter of law (motions for a directed verdict) and renewed motion for judgment as a matter of law (motion for judgment notwithstanding the verdict) *de novo. Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1078 (6th Cir. 1999) (citing *K & T Enters. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996) and *Wehr v. Ryan's Family*

*Steak Houses*, 49 F.3d 1150, 1152 (6th Cir. 1995)). In doing so, we use the same standard of review used by the district court. *Phelps v. Yale Sec.*, 986 F.2d 1020, 1023 (6th Cir. 1993). In order to prevail, Alpine must demonstrate that "no reasonable juror could have found for the nonmoving party." *Moore,* 171 F.3d at 1078. In applying this standard, we cannot weigh the credibility of witnesses and cannot substitute our judgment for that of the jury. *K & T Enters.*, 97 F.3d at 175-76. Instead, we are to view the evidence in a light most favorable to the government and give the government the benefit of all reasonable inferences. *Ibid.*

Alpine contends that the burden was on the government to establish a *prima facie* case and that the government did not meet this initial burden, so that Alpine is entitled to a judgment as a matter of law, notwithstanding the jury's verdict. The government conceded in a pretrial hearing that it had the burden of proving at trial 1) that Alpine had made claims or representations that fell within the terms of the Consent Order, and 2) that Alpine did not possess and rely upon competent and reliable scientific evidence at the time such claims or representations were made. Alpine takes issue with the second requirement in this appeal. Alpine contends that the government did not present sufficient proof that Alpine did not possess and rely upon competent and reliable scientific evidence at the time it made representations regarding all of the indoor air pollutants listed on the jury form (with the exception of smoke, cigarette smoke, and tobacco smoke), and regarding the health benefits bestowed on users by the product. Alpine does not dispute the sufficiency of the evidence presented by the government regarding the product's ability to maintain indoor ozone concentrations at a particular level.

Alpine, however, misconstrues the level of proof necessary to establish a *prima facie* case under these circumstances. During the hearing that led to the order establishing the shifting burden of proof in this case, some explanation was offered as to how the government would fulfill this

requirement, recognizing that the government was being asked to prove a negative. The government's lawyer stated that she understood the government's burden as being met if expert testimony were offered for the proposition that such experts were unaware of scientific data supporting Alpine's claims (or, if testimony has been offered in support of Alpine, which explained that the information produced by Alpine pursuant to the Consent Order in support of their claims was insufficient or incompetent). The court stated that it "was inclined to agree" with the government lawyer's assessment and that upon receipt of such testimony, Alpine would be expected to rebut the government's proffer and the jury would determine whether or not Alpine had done so effectively. Given that the Consent Order puts the onus on Alpine to make available on request all information relied upon by Alpine in making representations regarding the efficacy of its air-cleaning devices, we agree that the government's burden for making a *prima facie* case is satisfied if evidence was offered at trial that the information provided pursuant to the Consent Order was either insufficient or incompetant. The government certainly need not have proven that there was no competent or reliable basis upon which Alpine might have rested its claim. If the experts knew of none and information received from Alpine was insufficient to provide such a basis or was deemed unreliable, it was up to Alpine to provide further information that would convince the jury.

During the two-week long trial, the government produced experts in the fields of air pollution, ozone chemistry, and the efficacy of air cleaners, all of whom testified that they were unaware of any competent and reliable evidence to support various claims made by Alpine. These experts also discussed tests they had participated in, which further discredited Alpine's claims. Moreover, the FTC officer assigned to Alpine's case testified that the evidence submitted by Alpine to the FTC in support of its claims regarding the efficacy of its air-cleaning machines was evaluated by experts and deemed to be insufficient. In response, Alpine provided its own experts, who described in their testimony the various

tests they had done on the air-cleaning machines, and the evidence they had relied on in support of the claims made by Alpine.

In particular, Alpine points out that the government's experts focused on tests done on particles in tobacco smoke and states that there was no evidence presented regarding any of the other particulates such as dust, animal dander, insect parts, and so on. On this basis, Alpine contends that a verdict must be directed in its favor with regard to all particulates and some microbe and allergen claims. However, the government experts explained in their testimony that the results of these tests can be applied to other particulates, such as those at issue in this case, since they are in the same size range as those found in tobacco smoke.[2]   As it turns out, Alpine does not dispute this fact, but instead argues that because the results garnered from the tests on tobacco smoke can be extrapolated to all other particulates within the same size range, including microbes, and because the jury found that Alpine's claims regarding the efficacy of its air-cleaning devices with respect to tobacco smoke were supported by reliable and competent scientific evidence, it is not possible for the evidence to support the jury's findings against Alpine on the other particulates and microbes in that size range. Although we will address this argument, it is not properly raised here, as it goes not to the sufficiency of the evidence

_____

[2]For example, government expert Richard Sextro noted in his testimony that "we used environmental tobacco smoke, partly because it was representative of typical indoor particles, . . . if one looks at size dependent removal characteristics of any of the filters, those characteristics will be the same whether . . . it's a one micrometer particle that's environmental tobacco smoke or whether it's a one micrometer dust particle." Government expert Richard Shaughnessy stated: "Tobacco smoke is, as I said, it is perfect dispersion, you know, looking at particles, to be looking at particle reduction within a space. It provides you [sic] the range of particles that are of concern. . . . [I]t generates uniform dispersion and it is often used by investigators in the field to track the performance of air cleaning devices."

presented by the government in their *prima facie* case, but rather to the consistency of the jury's verdict.

Next, Alpine argues that the government did not address Alpine's claims that its devices introduce ozone into the air, which kills microbes through ionization.   However, government expert Eugene C. Cole testifed to the fact that tests published by the American Industrial Hygiene Association demonstrated that exposure of a large variety of organisms, including microbes and fungi, to concentrations of gas-phase ozone at the same or at higher concentrations than those claimed to be maintained by the Alpine air-cleaning products, had an impact on some organisms but were not ultimately effective at removing any of them according to industry standards.[3]   Furthermore, Cole testified that in his expert opinion he was unaware of reliable scientific evidence to support the claims made by Alpine with respect to the impact of ozone on microbes and fungi. This testimony is sufficient evidence to support the jury's findings of liability.

Alpine further contends that because none of the government experts were medical doctors, toxicologists, or health officials, they were not qualified to opine on whether its air-cleaning machines provide medical and health-related benefits and their testimony cannot, therefore, be considered sufficient evidence to support the jury's finding of liability on this question.   This argument is unpersuasive.   Alpine's experts and the government's experts did not disagree on which indoor pollutants cause health problems, the issue in dispute between them was whether Alpine's air-cleaning products were capable of removing the pollutants that cause health problems.   Thus, the expertise needed under these

_____

[3]Dr. Cole explained that within this "area of biocide efficacy or effectiveness, the standard that's been set for decades has been efficacy or effectiveness based upon achieving a three log reduction."   In sum, although the tests did show that some organisms were killed, more than one in one thousand were left alive, which is not considered to be effective by the industry.

circumstances was not that of a medical doctor, toxicologist, or health official, but rather an expert on the removal of indoor air pollutants. The jury simply determined that the government's experts were more credible on this point and we are compelled to defer to the jury's judgment. *K & T Enters.*, 97 F.3d at 175-76.

Finally, Alpine contends that the government offered no proof that Alpine did not rely on competent and reliable evidence for its claims with respect to its product's ability to remove certain chemical gases from indoor air: specifically styrene, isoprene, d-limonene, and alpha-pinene. And moreover, that Dr. Weschler's testimony for the government supported Alpine's claims that hydrogen sulfide, 4-ethenylcyclohaxene, 4-phenylcyclohaxene, double-bonded volatile organic chemicals, odiferous chemicals, acrolein, body odor, indole, scatole, garlic odor, and thyocyanite could be reduced through the use of ozone.

Dr. Weschler did in fact testify to the fact that even a relatively small concentration of ozone tends to break down styrene, hydrogen sulfide, 4-ethenylcyclohaxene, and 4-phenylcyclohaxene, which suggests that Alpine might prevail with respect to these compounds at least. Yet, if one views the evidence in a light most favorable to the government and gives the government the benefit of all reasonable inferences as we must, one finds that there was other evidence presented through Dr. Weschler's testimony and Dr. Cole's expert report on gas-phase ozone that can explain the jury's findings on these chemical pollutants. It is Alpine's contention that all of these pollutants are broken down and thus "removed" from the environment by Alpine's air-cleaning devices through their reaction with ozone. However, there are two problems with this theory. First, this process requires a certain concentration of ozone, and the evidence presented in Dr. Cole's report and through other expert testimony is that Alpine has not provided reliable test results that demonstrate the ability of its machines to maintain that level of ozone concentration. In fact, Alpine does not contest on appeal the

jury's separate finding that Alpine's claim that "[t]he sensor in [its] air cleaning products maintains indoor ozone concentrations at .05 parts per million or less" is *not* supported by competent and reliable scientific evidence. It is not unreasonable to assume that if the machine's ability to maintain a concentration of ozone is unsubstantiated, then its ability to remove certain pollutants by way of a reaction with ozone is also unsubstantiated.

Second, we return to Dr. Weschler's testimony. Although Dr. Weschler did say that concentrations of ozone will generally react with compounds containing double bonds, such as the ones mentioned above, he particularly noted that "it's an important thing to remember when we speak about ozone reacting with compounds in the air because often you might initially have one pollutant, and you'll result [sic] in two pollutants." In other words, rather than "cleaning" the air, as suggested in Alpine's literature, the ozone introduced by Alpine's air-cleaning devices may change a given molecule into two new compounds, which may be more concerning than what existed previously. As an example of this phenomenon, Dr. Weschler described an experiment he had conducted in which ozone had in fact lowered the amount of styrene, 4-ethenylcyclohaxene, and 4-phenylcyclohaxene in a controlled environment, but had nevertheless increased the level of formaldehyde and acetaldehyde in the air. Given this information, it is not unreasonable for a juror to determine that a claim by Alpine that a user's environment will be cleaned of a pollutant by its air-cleaning product is unsupported by competent and reliable scientific evidence, when in fact the pollutant may be broken down into other, even more noxious, pollutants. Thus, viewed in a light most favorable to the government, there was sufficient evidence presented at trial with respect to the jury's findings.

### III

*Motion for a New Trial*

A district court's decision to deny a new trial on the basis of the weight of the evidence shall be reversed only upon finding an abuse of discretion. *See Bruner v. Dunaway*, 684 F.2d 422, 425 (6th Cir. 1982). Alpine contends that the jury verdict was inconsistent and irreconcilable, that the district court allowed for an improper shifting of the burden of proof in the jury's special verdict form and through a comment made to the jury, and that the district court improperly excluded evidence relating to the negotiation history of the Consent Order, consumer satisfaction surveys, and marketing information that Alpine believed would have allowed the jury to perceive Alpine's marketing promotions in context.

*A. Inconsistent Verdict?*

As we noted in section II, the government's experts in addressing the viability of Alpine's claims regarding particulates focused on testing the ability of various devices in removing particles found in tobacco smoke, which the experts testified to be representative of the particles at issue in this case and therefore a good surrogate for testing the efficacy of a device in removing these other particles. Alpine accepts this premise, but argues on appeal that if the government's experts are right, the jury's verdict must be considered inconsistent and irreconcilable, since the jury found Alpine's claims regarding the ability of its air-cleaning devices to remove smoke was supported by competent and reliable scientific evidence, but that none of its other claims made with respect to other particulates were supported by such evidence. In sum, Alpine argues that if the results of smoke testing could be extrapolated to all other indoor air particulate at issue, then it would appear that the jury, because it found for Alpine on smoke, had no basis for a finding against Alpine on all the other particulates listed on the jury verdict form. This logic would also extend to the question of

microbes and allergens in particulate form and within the relevant size range.

In *Gallick v. Baltimore and O.R. Co.*, 372 U.S. 108, 119 (1963), the Supreme Court stated in relevant part:

> [I]t is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them . . . . We therefore must attempt to reconcile the jury's findings, by exegesis if necessary, before we are free to disregard the jury's special verdict and remand the case for a new trial.

The Sixth Circuit has also held that "[w]hen requested, a trial court faced with an apparent inconsistency between a jury's answers and the court's instructions must attempt to reconcile the two." *Holloway v. McIntyre*, 1988 WL 7961, Nos. 86-1001, 86-1898 at *3 (6th Cir. Feb. 4, 1988) (citing *Waggoner v. Mosti*, 792 F.2d 595, 597 (6th Cir. 1986)).

The district court reconciled the apparent inconsistency in the jury's verdict by determining that the jury had in fact been referring to "visible smoke" rather than the particulates in smoke, and we are persuaded that this is a reasonable conclusion. Alpine's reasoning assumes that the jury's favorable determination on the smoke removal claims reflected an implicit determination that Alpine's air purifiers effectively removed the particulate elements of smoke, when in fact smoke contains much more than particulate matter. In fact, Dr. Weschler noted in his testimony at trial that in addition to the particulates present in tobacco smoke, there are "thousands of chemicals."

Furthermore, the jury was presented at trial with evidence concerning the removal of "visible smoke." Alpine had a videotape demonstration, which showed its air-cleaning machines removing visible smoke from a small transparent chamber. The jury also heard from the government's expert, Dr. Sextro, who stated in doing his tests on particulates in

smoke: "[W]e didn't test [the effectiveness of the filter against smoke] gases. We didn't look at – I mean, I don't know if there was any absorption by the HEPA filter of any of the environmental smoke gases or not; that wasn't the purpose of our study." Based on this information, the jury could have concluded that Alpine had adequate substantiation to claim that its devices removed "visible smoke," which would be entirely consistent with the rest of the jury's determinations with regard to particulate claims.

### B. Burden of Proof

Alpine contends that the district court improperly shifted the burden of proof during the course of the trial. Alpine maintains that the jury's special verdict form is improperly worded, with the second part of each question reflecting a burden on Alpine to provide scientific evidence of the various contaminants that it could remove. That part of the question states "was the claim [made by Alpine with regard to a particular contaminant] supported by competent and reliable scientific evidence at the time the claim was made?" Alpine had requested instead that a different text be used: "Has Plaintiff proved that the Defendants did not possess and rely upon competent and reliable scientific evidence for claims that their air purifiers eliminate, remove, clear or clean [a particular contaminant]? Yes_____ No_____"

Alpine also points to a statement made by the district judge near the end of trial in which he addressed the jury and stated in relevant part:

> [Y]ou recall that your area of inquiry will be if Alpine and Mr. Converse made certain representations as described in the Consent Order, and you will be given a copy of the Consent Order. . . . That will be the first thing for you to decide, did Alpine after the date of that Consent Order make representations as, as described in the Consent Order, Question No. 1. Question No. 2, if they did, with regard to any particular representation, did

> Alpine and or Mr. Converse, as the case may be, have in their possession at that time and rely upon at that time on competent and reliable scientific evidence. Let that be burned into the back of your mind because that is the area of inquiry; that's what you will be called upon ultimately to decide.

Alpine argues that the verdict form was ultimately prejudicial and that as a result, Alpine did not receive a fair trial.

The district court responded to Alpine's claims, noting that:

> The jury was instructed, on more than one occasion, that the government had the burden of proving 1) that the defendants made a particular representation, 2) which was not supported by competent and reliable scientific evidence. The wording on the verdict form could not reasonably be read as contradicting the Court's explicit instructions regarding the burden of proof.

A special verdict form will only provide grounds for reversal if it is confusing, misleading, or prejudicial when viewed as a whole. *See Hostetler v. Consolidated Rail Corp.*, 123 F.3d 387, 393 (6th Cir. 1997). In this case, the form should be viewed along with the jury instructions, which clearly stated where the burden of proof lay:

> The verdict form asks you a set of two questions as to each alleged claim: First, has the government proven by a preponderance of the evidence that Alpine and Mr. Converse, individually and as an officer of Alpine, made a claim covered by the terms of the consent order; and, second, if yes, did the government prove by a preponderance of the evidence that the defendants at the time such claim was made did not possess and rely upon competent and reliable scientific evidence to substantiate it, that claim or representation?

These jury instructions reflect the proper placement of the burden of proof, which starts with the government and moves to Alpine, once the government offers enough evidence to make its *prima facie* case.

## C. Parol Evidence

Alpine objects to the district court's use of the parol evidence rule to exclude evidence of the negotiations with the FTC that led to the execution of the Consent Order, which ultimately prevented Alpine from explaining that it understood the Order to cover only assertions made by Alpine with regard to reducing the level of a contaminant by a specific percentage and not general statements made with regard to reducing the level of contaminants. The district court, however, properly concluded that the Consent Order unambiguously covered claims that Alpine's devices eliminated portions of contaminants whether or not such claims were expressed as a numerical percentage.

## D. Exclusion of Consumer Reports and Marketing Information

Alpine also appeals the district court's decision to exclude testimony concerning consumer satisfaction surveys and marketing information. Alpine argues that the district court abused its discretion in precluding the testimony that Alpine wished to include relating to the context in which the various representations at issue in this case were made by Alpine. The government's position, upheld by the district court, was that it was necessary only for the government to show promotional brochures, videotapes, audio tapes, and training tapes, in order to demonstrate that a claim had been made. Alpine argued that the context in which these materials were disseminated was an important factor to be considered when determining whether the representations were directed to consumers or instead to dealers. The government argues that whether the statement was made to a consumer or to a dealer is immaterial for purposes of the Consent Order, which only

refers to "representations" and does not specify to whom those representations will be made. Alpine argues that the Consent Order must be interpreted in light of its principal purpose, which was to prevent unsubstantiated claims about the efficacy of Alpine's air purifiers from being made to consumers.

The Consent Order is unambiguous on this point, stating repeatedly that Alpine was not to make the relevant representations "in any manner, directly or by implication," "in connection with the manufacturing, labelling, advertising, promotion, offering for sale, sale, or distribution of any air cleaning product in or affecting commerce." The language of the Order is plain and does not require further interpretation. In addition, any representations made to distributors or other salespeople are obviously intended to be passed on to customers.

Furthermore, Alpine is not entitled to a new trial unless it can show that its substantial rights were prejudiced. *See McGowan v. Cooper Indus.*, 863 F.2d 1266, 1271 (6th Cir. 1988). Alpine must show that the exclusion was not only erroneous, but also resulted in a substantial injustice. *See Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 357 (6th Cir 1997). Alpine has not demonstrated how the exclusion of this evidence produced a substantial injustice.

## IV

### *The Permanent Injunction*

The permanent injunction is reviewable only for abuse of discretion. *See S. Cent. Power Co. v. Int'l Bhd. of Elec. Workers*, 186 F.3d 733, 737 (6th Cir. 1999). Alpine is enjoined from making any claims or representations that its product can:

[E]liminate, remove, clear, or clean from indoor air any pollutant, contaminant, microorganism (including

bacteria, viruses, molds, and mildew), chemical or particulate, or any specific quantity or amount of any of the foregoing. Defendants may, however, represent that their product can remove "visible" tobacco smoke and *some* odors (without specifying what odor), providing, however, defendants may not claim or represent, expressly or impliedly, that the removal of visible tobacco smoke or some odors necessarily implicates the removal of any chemical, particulate, or microorganism.

They shall make no claim or representations in any form or by any means expressly or impliedly that Alpine's products prevent or provide, or may prevent or provide, relief from any health or medical condition of any kind.

Alpine contends that the scope of injunctive relief afforded by the permanent injunction conflicts with the jury's findings and the government's concessions and is subsequently overinclusive. In particular, Alpine argues that the court should not have excepted only "visible" tobacco smoke since the jury made no such explicit distinction in their verdict. The judge's reasoning for this language is revealed in the memorandum attached to the prior modified Interim Injunction, which states that:

The jury was asked a specific question about "smoke"; they were not asked about the component parts of that smoke. The jury likely interpreted the question literally, viz, visable smoke. Most lay people would define "smoke" as something that can be seen or smelled.

The court's reasoning is consistent with its and our own interpretation of the jury's verdict, and does not reflect an abuse of discretion.

Next, Alpine contends that although the permanent injunction allows claims for general odors, it prohibits claims for specific odors without any supporting rationale. Alpine points to a statement made by the government's lawyer

during trial, which conceded that "odors are not a part of this case. They never have been." Alpine also points to the fact that experts agreed that the product could be effective on some odors, specific ones of which were identified. In sum, Alpine maintains that even if its request for JNOV or a new trial is not granted, the company should be allowed to make claims for the reduction of smoke, tobacco smoke, cigarette smoke, all common indoor air particulates, general and specific odors, and other chemical gases. Alpine, however, goes too far. While it is possible that Alpine's products may be effective against some odors, none of the government's experts testified that there was competent and reliable scientific evidence to support the claim that Alpine's air-cleaning devices will reduce all common indoor air particulates, general and specific odors, and "other" chemical gases. Furthermore, the district court's injunction does not prevent Alpine from claiming that it is able to remove "some odors" and yet prevents it from making specific claims, which, for example, could be used in a misleading way to make indirect claims that Alpine's devices also reduce the particulates associated with those odors. Since the district court did not abuse its discretion, we find no reason to amend the permanent injunction now in place.

## V

### *Excessive Penalty*

Alpine contends that the penalty assessed was excessive in light of the fact that Alpine relied in good faith on experts and should not be "harshly punished." However, the district court did not pick the penalty it assessed, $1.49 million dollars, out of thin air. The court consulted the relevant statute, 15 U.S.C. § 45(l), which provides that:

Any person, partnership, or corporation who violates an order of the Commission after it has become final, and while such order is in effect, shall forfeit and pay to the

United States a civil penalty of not more than $10,000 for each violation . . . .

The statute additionally provides that "[I]n the case of a violation through continuing failure to obey or neglect to obey a final order of the Commission, each day of continuance of such failure or neglect shall be deemed a separate offense." The district court, in considering the statute quoted above, noted that if each of the exhibits shown to the jury were to be "parsed for individual misrepresentations, there would be thousands upon thousands of violations." The court, therefore, determined to take a reasonable course, calculated that Alpine's violations continued over a total of one thousand four hundred ninety days, took into account Alpine's conduct, its financial resources, and the need to vindicate the FTC's authority in order to provide deterrence, and decided that a civil penalty in the amount of one thousand dollars per day over the period in question would be acceptable.

Alpine contends that the court did not give proper consideration to its good faith efforts to comply with the FTC's requirements. However, the court did so at length.

## VI

For the reasons given above, we AFFIRM the district court's judgment in its entirety.