**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0036n.06
Filed: January 11, 2006

**Nos. 04-4436, 04-4437**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| MARY S. LINTON, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| STREETSBORO CITY SCHOOL DISTRICT | ) | OHIO |
| BOARD OF EDUCATION, et al., | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before:  SILER and GRIFFIN, Circuit Judges; Cook, District Judge.[*]

**SILER**, Circuit Judge.  Plaintiff Mary Linton filed suit against Defendants Streetsboro City

School District Board of Education ("Board") and various individuals in the school system alleging

breach of contract, defamation, intentional infliction of emotional distress, and civil conspiracy

claims.  The district court granted summary judgment to Defendants on all but the breach of contract

claim and, on that claim, a jury found in favor of Linton.  Defendants appeal the judgment for Linton

on the breach of contract claim while Linton appeals the grant of summary judgment.   For the

reasons stated below, we AFFIRM.

**BACKGROUND**

---

[*]The Honorable Julian A. Cook, Jr., United States District Judge for the Eastern District of
Michigan, sitting by designation.

After a dispute between the Superintendent (Linton) and the Board, the two sides came to a termination agreement that both thought best served their respective interests. This severance agreement stated the terms on which Linton was to leave Streetsboro, including a confidentiality clause that stated:

> The Board agrees to maintain this Agreement and Release and issues relating to her employment with the Board as confidential and the Board, to the maximum extent permitted by law, shall keep this Agreement and Release and issues relating to Linton's employment confidential. The terms of this Agreement and Release are intended to be enforced as herein written to the maximum extent permitted by law.

The agreement was signed by the Board and Treasurer in their official capacities and also by the Board members and the Treasurer in their individual capacities.

Shortly after her departure from Streetsboro, Linton accepted a job as a superintendent in Virginia. A few months later, the Ohio State Auditor's office released a report concerning its investigation into alleged improprieties in the Streetsboro school system finding no illegalities, but detailing various questionable practices in the school system. Immediately after the issuance of this report, the Board, although not required to by law, issued a press release concerning the audit report. This press release was extremely critical of Linton, focused solely upon that portion of the Auditor's report concerning her, and included quotes from various Board members and the Treasurer that were especially unfavorable to Linton.

This press release was eventually reported in newspapers in Virginia. As a result of the ensuing controversy, Linton resigned her superintendent position in Virginia and began looking for other positions. During this search and after the institution of these proceedings, Linton learned that she had been selected as one of "five or six" candidates to interview for the superintendent's position

with the Stafford County School District in Virginia. However, after being selected as a finalist, a routine background check conducted by the Virginia School Board Association ("VSBA") revealed the accusations of financial irregularities from Streetsboro. Based upon this information, Stafford County declined to interview Linton.

Linton's lawsuit asserted claims for breach of contract due to Defendants' breach of the confidentiality provision in the severance agreement, defamation, intentional infliction of emotional distress, and civil conspiracy. After a jury trial, the court granted Linton damages in an amount that was eventually reduced to $725,523.

## DISCUSSION

### 1. Causation

Defendants contend that Linton failed to establish that her loss of earnings, or profits, was the probable result of Defendants' breach. The district court denied Defendants' motion for judgment as a matter of law on this issue, holding that its motion was "patently without merit." A district court's denial of a motion for judgment as a matter of law is reviewed *de novo*. *United States v. Alpine Indus., Inc.*, 352 F.3d 1017, 1022 (6th Cir. 2003).

In Ohio, lost profits can be recovered by the plaintiff in a breach of contract action if: (1) the "profits were within the contemplation of the parties at the time the contract was made," (2) "the loss of profits is the probable result of the breach of contract," and (3) "the profits are not remote and speculative and may be shown with reasonable certainty." *Charles R. Combs Trucking, Inc. v. Int'l Harvester Co.*, 466 N.E.2d 883, 887 (Ohio 1984) (citation omitted). The issue on appeal is whether sufficient evidence existed to satisfy the second prong. Although Barbara Cole, the former chair of

the Stafford County School District Board, stated that she could only speculate as to whether Linton

would have been hired had this information not surfaced, Cole clearly stated that Linton was

removed from Stafford County's interview when the school board learned of "some sort of financial

irregularities with a school system she had worked with" previously. Furthermore, there was

substantial circumstantial evidence that the VSBA, who provided the information to Stafford

County, discovered this information due to Defendants' widespread dissemination of Linton's

employment history.[1] This evidence, when coupled with Louise Carlton's[2] testimony that Linton

would not "have a prayer of getting a job in the State of Virginia" due to the Streetsboro controversy

and the fact that Linton was unable to obtain a superintendency in the state of Virginia despite

significant effort, provides a plausible basis for the jury's verdict. On the whole, there was sufficient

evidence from which a jury could determine that Linton was denied a superintendency in Virginia

because of the Defendants.

## 2. Confidentiality Provision

Next, Defendants assert that the district court erred when it denied their motion for a

judgment as a matter of law with regard to the confidentiality provision. They claim that the

confidentiality provision unambiguously bound only the Board as a whole and did not bind either

---

[1]In early 2002, Todd Puster, Treasurer of the Streetsboro School District, faxed a copy of a press release to a Virginia educational group. The release contained numerous derogatory references to Linton, including a comment from a Board member stating, "[Linton] looked for the loopholes. She exploited our trust." Moreover, there was evidence also showing that Puster had talked to reporters in Virginia about Linton's employment at Streetsboro.

[2]Carlton possessed significant educational experience in Virginia education, as she had worked in Virginia education for 49 years and served for 10 or 12 superintendents during that time.

the Board members or the Treasurer in their individual capacities. Looking at the evidence as a whole, the decision of the jury, that the confidentiality provision bound the Board members and the Treasurer in their individual capacities, cannot be deemed unreasonable. Defendants' entire argument is founded upon the assertion that the contract is unambiguous on its face. However, the agreement and the testimony at trial[3] plausibly showed that the confidentiality provision was meant to cover Defendants in their individual capacities. As the district court noted, perhaps nothing illustrated this intent better than having each Board member and the Treasurer sign the severance agreement in their individual capacity.

**3. Motion for a New Trial**

Defendants' third argument is that the district court should have granted a new trial because the manifest weight of the evidence did not support the jury's verdict.

> In a diversity case, federal law governs the district court's decision whether to grant a new trial on the basis of the weight of the evidence, which is reviewed by this court for an abuse of discretion. Finding an abuse of discretion in this context requires a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached . . . [W]hile the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached.

*Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000) (internal quotations, alterations, and citations omitted). In arguing the verdict was against the manifest weight of the evidence, Defendants rely upon the same arguments asserted previously in dealing with the issue of causation.

---

[3]For example, Linton's former counsel testified at trial that he specifically wanted to ensure that "each of these Board members reviewed [the Agreement], signed it, understood it, and were party to it." Further, Board member Pennoch-Hanish testified that when she signed the agreement she understood that she was giving up her right "to comment on Mrs. Linton's performance in Streetsboro."

Nos. 04-4436, 04-4437
Linton v. Streetsboro City Sch.

*See supra* § 1. For the reasons discussed above, the verdict could have reasonably been reached and, accordingly, the district court did not abuse its discretion in denying Defendants' motion.

## 4. Jury Instruction

Fourth, Defendants claim that the district court abused its discretion when it refused to issue a requested jury instruction concerning the Ohio Public Records Act. Instead of using Defendants' proposed instruction highlighting Streetsboro's duty to disclose information under the Act, the district court issued the following instruction: "After the Auditor of the State of Ohio releases an audit report about a school district to the public, there is no statutory duty imposed upon the school district's Board of Education or employees to issue a public statement, such as a press release, concerning the auditor's report." In denying Defendants' motion for a new trial on this issue, the district court justified its decision to issue the preceding instruction and deny the Defendants' requested instruction because "it believed [this] would be less confusing in the context of the evidence."

A district court's refusal to give a requested jury instruction is reviewed under an abuse of discretion standard. *Tompkin v. Philip Morris USA, Inc.,* 362 F.3d 882, 901 (6th Cir. 2004) (citation omitted). "We review jury instructions as a whole in order to determine whether the instructions adequately inform the jury of relevant considerations and provide a basis in law for aiding the jury to reach its decision." *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir. 2000) (internal quotations and citation omitted). The refusal to issue an instruction constitutes reversible error if "(1) the omitted instruction is a correct statement of the law, (2) the instruction is not substantially covered by other delivered charges, [and] (3) the failure to give the instruction impairs

the requesting party's theory of the case." *Id.* (citation omitted). However, reversal is appropriate "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Id.* (internal quotations and citation omitted).

A major issue at trial was whether Defendants breached their contractual duty to Linton by issuing a press release concerning the Auditor's report depicting Linton in a negative light and by negatively commenting to various individuals on Linton's performance at Streetsboro. Defendants argued that they had a duty to disclose certain information to the public, while Linton contended that this disclosure duty was very limited and not affirmative. The context is important because the Defendants' proposed instruction, while a correct statement of the law, was an ambiguous formulation of the law. *See* OHIO REV. CODE §§ 149.011(D), (G) & 149.43(B)(1). Section 149.43(B)(1) makes clear that public officials only have this disclosure duty "upon request"; thereby validating the district court's ruling that the affirmative issuance of a press release by Streetsboro was not required under the Ohio Public Records Act. Viewing the instructions in that light, the district court's decision to reject Defendants' proposed instruction cannot be deemed an abuse of discretion since the instruction given sought to, and in fact did, counter any potential confusion and misapprehension on the part of the jury.

Lastly, Defendants' contentions that the jury instructions prejudiced their case by obscuring causation issues is unpersuasive given that the jury was obviously aware that Defendants had a duty to disclose certain information under the Ohio Public Records Act and given that Defendants' proposed instruction fails to address this causation issue.

**5. Improper Opinion Testimony**

Defendants next argue that the district court erred in allowing Louise Carlton to improperly provide opinion testimony concerning Linton's ability to find a job in Virginia. A district court's decision to admit lay opinion testimony is reviewed for an abuse of discretion. *JGR, Inc v. Thomasville Furniture Indus., Inc.,* 370 F.3d 519, 524 (6th Cir. 2004). Opinion testimony by a lay witness is "limited to opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701.

Carlton testified that she had been involved in the education field for 49 years and had worked for 10 or 12 superintendents in that time. These facts alone suggest that Carlton has been in a position to rationally judge both the nature of the educational and superintendent community in Virginia and the employment prospects of a superintendent candidate. Second, an important "fact in issue" in this case was whether the information released by the Defendants adversely harmed Linton's employment prospects in Virginia. Carlton's testimony shows that the allegation of financial irregularities and previous troubles at Streetsboro could impact Linton's search for a superintendent position in Virginia. Lastly, Carlton's opinions were not based on "scientific, technical, or other specialized knowledge," nor do Defendants allege as much. Ultimately, the district court's decision cannot be deemed an abuse of discretion.

## 6. Validity of the Severance Agreement

Defendants' final contention is that the severance agreement is void for failure to comply with OHIO REV. CODE §§ 5705.41 & 5705.412. In short, they contend that the school district was

unable, under law, to make an expenditure in excess of $500,000 without the required fiscal certificate and signatures, which did not exist here. Defendants failed to raise this issue before the district court, presenting it for the first time on appeal. "It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citations omitted). Here, there is no allegation of a fundamental miscarriage of justice. Further, Defendants' explanation for their failure to raise this argument below, that they did not know the damages award would exceed $500,000 until after the remittitur was complete, is plainly lacking. In her original complaint, plaintiff sought, at a minimum, $325,000 in relief. Moreover, after the jury returned damages of almost $1 million, Defendants could have argued this point in either their motion for a judgment as a matter of law or motion for remittitur, both of which came after the verdict. Accordingly, we will not consider this argument.

**7. Defamation Claim**

The district court granted summary judgment to Defendants on the ground that Linton had failed to offer proof of actual malice in support of her defamation claim, as required by Ohio law. First, Linton agrees that, as a school superintendent, she should be classified as a "public official" for purpose of defamation analysis and therefore is subjected to a heightened standard of proof, requiring evidence of actual malice in order to establish her claim. Nevertheless, Linton disagrees that the record does not contain sufficient proof of actual malice to withstand summary judgment.

A district court's grant of summary judgment is reviewed *de novo*, "viewing the evidence and drawing all reasonable inferences in favor of the nonmoving party." *Mahon v. Crowell*, 295

F.3d 585, 588 (6th Cir. 2002) (citation omitted). The grant of summary judgment should be affirmed "only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002). Actual malice is defined as "publishing a statement with knowledge that it was false or with reckless disregard of whether it was false or not." *Scott v. News Herald*, 496 N.E.2d 699, 704 (Ohio 1986) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964) (internal quotations omitted)).

> Whether the evidence in the record supports a finding of actual malice is a question of law. To answer this question, we are obliged to undertake an independent review of the record. We may not infer the existence of actual malice from evidence of personal spite or ill will alone; rather, our focus is on the publisher's attitude toward the truth or falsity of the publication. But evidence of ill will can be relevant: This standard requires a clear and convincing showing, which may be by circumstantial evidence, of the defendant's actual state of mind -- either subjective awareness of probable falsity or actual intent to publish falsely.

*McKimm v. Ohio Elections Comm'n*, 729 N.E.2d 364, 373 (Ohio 2000) (internal quotations and citations omitted).

Linton cites Streetsboro's press release as defamatory and alleges that the document itself, combined the events surrounding her departure from the school, evidence the intent necessary to satisfy the actual malice standard. However, a review of both the press release and the record show little evidence of Defendants' subjective intent. The report, upon which the press release is based, did find many of the allegations contained in the press release. Furthermore, the fact that Streetsboro issued a resolution praising Linton at the time of her departure from the school, as required by the severance agreement, that was later followed by this scathing press release appears of little value in determining the subjective intent of Defendants at the time of the press release.

Overall, there is clearly evidence of animosity, personal spite, and ill will toward Linton; but this is almost the totality of the evidence which Linton presents. As stated above, this alone is not enough to establish actual malice. *McKimm*, 729 N.E.2d at 373.

**8. Conspiracy Claim**

Linton also alleges that the district court erred in granting Defendants summary judgment on her civil conspiracy claim. The district court held, "For civil conspiracy to be actionable, a plaintiff must assert an underlying tort claim that will serve as the basis for the conspiracy." Since Linton's sole argument on this issue is that her defamation claim should not have been dismissed and therefore it would constitute the basis of the civil conspiracy claim, the district court's grant of summary judgment is appropriate given our decision above affirming the dismissal of the defamation claim.

AFFIRMED.