**IN RE RAMCO–REMODEL AMERICA CORP., Debtor. Tax ID: 62–15700996**

**Ramco–Remodel America Corp., Plaintiff,**

**v.**

**William and Barbara Wallis, Defendants.**

Case No. 09–20539
Adv. Proc. No. 13–00522

United States Bankruptcy Court,
W.D. Tennessee,
**WESTERN DIVISION.**

Signed May 6, 2015

Filed May 7, 2015

See also 2015 WL 5098628.

John Edward Dunlap, Edwin C. Lenow, Memphis, TN, for Plaintiff.

Michael P. Coury, Glankler Brown PLLC, Memphis, TN, for Defendants.

## MEMORANDUM AND ORDER RE DEFENDANTS' MOTION IN LIMINE COMBINED WITH RELATED ORDERS AND NOTICE OF THE ENTRY THEREOF

David S. Kennedy, UNITED STATES CHIEF BANKRUPTCY JUDGE

### INTRODUCTION

The instant proceeding arises out of the "Defendants' Motion In Limine" filed on March 10, 2015, by the defendants, William and Barbara Wallis (collectively, "the Wallises"), and the "Response" filed thereto by the plaintiff, Ramco–Remodel America Corporation ("Ramco"), in the above-captioned adversary proceeding filed in the Chapter 11 case of Ramco, the abovenamed debtor in possession. The narrow question for judicial determination is whether John E. Dunlap, Esquire ("Mr.Dunlap"), attorney for Ramco, may testify at the trial of this adversary proceeding as to the substance of the postpetition communications exchanged between himself and Earl Buckles, Esquire ("Mr.Buckles"), former attorney for the Wallises, who is now deceased, that ulti-

mately gave rise to the December 30, 2009 Consent Order ("the Consent Order") entered into by these parties, which resulted in the withdrawal of the Wallises rejection of Ramco's Chapter 11 plan of reorganization (the "Plan"). On April 28, 2015, the court held a hearing on the Motion in Limine and the Response.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (L). The following shall constitute this court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### BACKGROUND FACTS AND PROCEDURAL HISTORY

The relevant background facts and procedural history may be briefly summarized as follows. Prior to the commencement of this Chapter 11 case, the Wallises filed a civil action lawsuit in the County Court of Desoto County, Mississippi, for damages against both Ramco and Les W. Stone ("Mr.Stone"), individually. Mr. Stone owns Ramco. The Wallises obtained a default judgment on January 14, 2008, against Ramco and Mr. Stone in the amount of $51,872.18, plus all attorneys' fees and reasonable costs associated with collection of the judgment. Ramco filed this voluntary Chapter 11 case on January 16, 2009. The Wallises timely filed a proof of claim in the amount of $56,747.80 on February 11, 2009, arising out of the prepetition default judgment obtained in Desoto County, Mississippi.

On April 3, 2009, Ramco filed an objection to the Wallises' claim, in essence, asserting that the claim should be disallowed because it involved a disputed judgment. Ramco later filed its proposed Chapter 11 plan on November 19, 2009, which provided, in relevant part, that the Wallises, as a class 7 general unsecured

creditor, would receive a distribution of $333.33 for their prepetition claim. The Wallises voted against Ramco's plan.[1] To resolve the Wallises' rejection to the confirmation of the plan, Ramco entered into a Consent Order with the Wallises, on December 31, 2009, whereby the Wallises withdrew their rejection to the plan for consideration of a lump sum payment of $5,000. This resulting Consent Order is the underlying document that is the basis of the instant adversary proceeding. The Consent Order provided, in pertinent part, that the "consideration for the withdrawal of Ballot [rejecting the proposed plan] is the payment to Wallis by Debtor of Five Thousand Dollars ($5,000.00) on or before January 30, 2010." [Docket # 93]. The remainder of the Consent Order provided the consequences of and remedies available to the Wallises in the event of non-payment.

Ramco initiated this adversary proceeding on November 14, 2013, seeking a declaratory judgment involving the prior Consent Order agreed to by Ramco and the Wallises regarding the withdrawal of the Wallis' rejection to Ramco's plan. Mr. Stone was not a party/signatory to the Consent Order. In this adversary proceeding, Ramco alleges that the "Plaintiff [Ramco] and Defendant [Wallises] negotiated terms to resolve the [rejection of the plan and the] objection to confirmation as well as the entire debt." [Docket # 1]. Furthermore, the complaint states that the Consent Order "was intended to resolve the debt as to *all parties*, not simply the Debtor/Plaintiff." *Id.* (emphasis added). In response to Ramco's adversary proceeding, the Wallises denied that "they settled any claim against any non-debtor,"

which would, in this case, be Mr. Stone. The Wallises additionally claimed that the $5,000 lump sum payment was consideration solely for withdrawal of their ballot rejecting Ramco's plan rather than a full settlement of the claim in its entirety. [Docket # 2]. The Wallises further point out that the plan similarly fails to provide for the release of any co-debtors or the like.

The Consent Order giving rise to this proceeding was negotiated by Mr. Dunlap, then attorney for Ramco, and Mr. Buckles, then attorney for the Wallises. Unfortunately, Mr. Buckles is now deceased. On a limited basis, Mr. Dunlap has since withdrawn from representation of Ramco in this adversary proceeding in order that he might be a witness at the trial of this adversary proceeding to account for the substance of the settlement negotiations, as well as the parties' intent, involved in the attorneys' agreement embodied in the Consent Order. It is observed that Mr. Dunlap still is the attorney of record in this case—just not this particular adversary proceeding. On March 10, 2015, the Wallises filed a Motion in Limine to prevent Mr. Dunlap from testifying as to the contents of the above-referenced settlement negotiations. Ramco filed a Response to the Motion in Limine on April 10, 2015. The court held a hearing on the Wallis' Motion in Limine on April 28, 2015, and took the matter under submission.

## DISCUSSION

### A. Competency

Rule 601 of the Federal Rules of Evidence, made applicable here by virtue of FED. R. BANKR.P. 9017, provides that "[e]v-

---

1. It is noted that the Wallises held by far the largest unsecured claim against Ramco, and thereby, controlled the outcome of the vote of the unsecured class regarding whether or not Ramco would have a confirmable plan. The Wallis' favorable vote on the plan, as such, was critical to the plan's confirmability.

ery person is competent to be a witness unless [the] rules provide otherwise. But, in a civil case, State law governs a witness's competency regarding a claim or defense for which state law supplies the rule of decision." FED. R. EVID. 601. Because the instant issue involves a consent order agreed upon by both Ramco and the Wallises, Tennessee State law will apply to determine the competency of any witness since state law applies to rules of decisions governing contracts. *See U.S. v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975) ("Since a consent decree or order is to be construed for enforcement purposes basically as a contract [. . .]")

■ Tennessee continues to recognize a limited version of the Dead Man's Statute, as codified in TENN. CODE ANN. § 24–1–203. The statute provides

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party. If a corporation is a party, this disqualification shall extend to its officers of every grade and its directors.

TENN. CODE ANN. § 24–1–203 (2014). As such, this statute does not come into play in this case. In order to exclude testimony, both of the following must be evident: "(1) the proposed witness must be a party to the suit in such way that judgment may be rendered for or against him/her, and (2) the subject matter of the testimony must be concerning some transaction with or statement by the testator." *Leffew v. Mayes*, 685 S.W.2d 288, 293 (Tenn.Ct.App. 1984) (*citing Montague v. Thomason*, 91 Tenn. 168, 18 S.W. 264 (1892)); *See also* Trial Handbook for Tenn. Law § 14:1. Since Mr. Dunlap is not a party to the

action, but instead was a former attorney of a current party, judgment cannot be rendered for or against him. Inasmuch, the first prong of exclusion is not satisfied. Moreover, the instant adversary proceeding does not concern actions "by or against executors, administrators, or guardians" as required by the statute. Tenn.Code Ann. § 24–1–203. The Tennessee Dead Man's Statute will not, on its own, prohibit Mr. Dunlap from acting as a witness on behalf of the Ramco.

### B. Parol Evidence

■ It is well-settled that where a contract is facially unambiguous, it must be interpreted as it is written. *See, e.g., Sutton v. First National Bank of Crossville*, 620 S.W.2d 526, 530 (Tenn.Ct.App. 1981)("If the language of a written instrument is clear and unambiguous, the court must interpret it as written, rather than according to the unexpressed intention of one of the parties."); *U.S. v. Alpine Industries, Inc.*, 352 F.3d 1017, 1028 (6th Cir.2003)(upholding the district court's exclusion of extrinsic evidence to a consent order). The intentions of the parties, moreover, should be discerned from the four corners of the contract, and terms embedded in the contract should be given their "ordinary" meaning. *U.S. v. Tennessee*, 632 F.Supp.2d 795, 800 (W.D.Tenn. 2009). However, if a term included in the contract is ambiguous or requires additional explanation, parol evidence may be admissible to supplement the terms of the contract. *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832, 838 (Tenn.Ct.App.1980)("Evidence of a prior or contemporaneous agreement inconsistent with or varying the terms of a written contract is, of course, inadmissible under the parol evidence rule. But the terms of a written agreement intended by the parties as a final expression may be explained or supplemented by evidence of consistent additional terms unless the court finds the

writing to have been intended also as a complete and exclusive statement of the terms of the agreement.").

■ Here, the Consent Order does not appear to this court to be facially ambiguous such that parol evidence need be admissible to determine the Consent Order's meaning or effect. The Consent Order, as written, is very brief and is entitled "Consent Order Withdrawing The Rejection Ballot Filed By William And Barbara Wallis To The Proposed Reorganization Plan Filed By Debtor." [Docket # 93]. Ramco and Mr. Stone contend that the Consent Order was intended to memorialize the agreement that a lump sum cash payment of $5,000 would be made to the Wallises in consideration for the following: (1) withdrawal of the Wallises rejection and objection to Ramco's Chapter 11 plan of reorganization, thereby allowing confirmation of the plan; (2) releasing Ramco from further liability to the Wallises; and (3) also releasing Mr. Stone, who also is liable under the prepetition default judgment, from further liability to the Wallises.

■ While the intent or belief of both Ramco and Mr. Stone of an absolute release from liability may indeed exist and be present, this is not the result conveyed in the express and objective terms of the Consent Order agreed to by Ramco and the Wallises and approved by the court.[2] The Consent Order, contrarily, does not purport to release any third party from further liability (*e.g.*, Mr. Stone)—nor does the plan. Moreover, the Consent Order specifically states that the "consideration for this *withdrawal of Ballot is the payment to Wallis by Debtor [Ramco] of Five Thousand Dollars.*" [Docket # 93; em-

phasis added]. No mention of absolute release from liability of Mr. Stone is readily apparent. The court's reading of the Consent Order, as such, is that the intention of Ramco and the Wallises was simply to entice the Wallises to withdraw their vote rejecting Ramco's reorganization plan and vote in favor of the Chapter 11 plan.[3]

Accordingly, after careful review and consideration of the record, the court sees no ambiguity in the Consent Order as agreed to and submitted by Ramco and the Wallises (or the plan) such that parol evidence is necessary to determine contractual intent and meaning. The court further finds that the terms of the contract (*i.e.*, the Consent Order), with application of the terms' "ordinary" meanings, are subject to only one interpretation, such that parol evidence to further define or clarify the terms as written would be improper.

■ The intent to release a third-party co-debtor or co-obligor also is lacking in Ramco's confirmed Chapter 11 plan. Confirmation of a Chapter 11 plan, by virtue of 11 U.S.C. § 1141(d), essentially operates as a concomitant § 524(a) discharge for the reorganizing debtor. Under 11 U.S.C. § 524(e), made applicable to Chapter 11 cases by virtue of 11 U.S.C. § 103, a discharge "does not affect the liability of any other entity on, or, the property of any other entity for, such debt." 11 U.S.C. § 524(e). Thus, discharge of a debtor does not similarly provide for an automatic discharge of co-debtors or co-obligors. Since the plan failed to include an express provision providing for absolute release of Mr. Stone from liability as a third party and co-judgment defendant/debtor, and since

---

**2.** "The uncommunicated intent of the plaintiff is not a mutual mistake of fact" requiring a rescission of a contract. *Rogers v. First Tenn. Bank Nat'l Ass'n*, 738 S.W.2d 635, 637 (Tenn. Ct.App.1987).

**3.** See discussion of the Wallises unsecured claim *supra*. Since the Wallises held the largest general unsecured claim, the Wallises essentially had "veto power" over the plan's confirmation. The confirmation of the plan benefited both Ramco, as well as Mr. Stone.

the discharge of a debtor under Chapter 11 does not simultaneously discharge a co-obligor, Mr. Stone is still liable as a defendant/co-debtor owed to the Wallises. 11 U.S.C. § 524(e). The Consent Order, as discussed *supra*, operated to effectuate and to bring about the Wallises favorable vote for the confirmation of Ramco's plan. Because neither the Consent Order nor the plan provided for a release of any third parties or co-obligors (*e.g.*, Mr. Stone), the court is unable to permit the introduction of extrinsic evidence that would contradict the unambiguous terms of the Consent Order as submitted.

### C. Evidence of Settlement Discussions

 Rule 408 of the Federal Rules of Evidence, made applicable here by virtue of Rule 9017 of the Federal Rules of Bankruptcy Procedure, provides that "conduct or a statement made during compromise negotiations about the claim" are inadmissible. FED. R. EVID. 408(a)(2). Courts encourage settlement and compromise, and in doing so, as a matter of public policy, exclude evidence of statements made during settlement conversations in order to promote and encourage honest, open, and candid discussions and communication between parties.[4] Here, the underlying claim is clearly disputed because the parties are in disagreement about whether or not a claim, in fact, exists. Evidence of statements made during these settlement negotiations, furthermore, would be offered to prove the validity of the claim—something expressly prohibited by Rule 408. FED. R. EVID. 408.

At the hearing held on April 28, 2015, counsel for Ramco stated that Mr. Dunlap and Mr. Buckles, stepped outside the courtroom to attempt to resolve the Wallises objection to the Ramco plan. The Consent Order is the byproduct of these negotiations between the attorneys. As such, this court must conclude that Consent Order accurately reflects and embodies what the attorneys intended to be the result and outcome to the disagreement. Admission of statements made between the attorneys during the settlement discussions could nullify the Consent Order as it was drafted and also could potentially have a chilling effect on future communications between settling parties. The policy of encouraging settlement and compromise, as outline in Rule 408, outweighs admission of contradictory extrinsic evidence here.

### CONCLUSION

Based on the foregoing, the court grants the Wallises' Motion in Limine and concomitantly finds and concludes, considering the entire case and proceeding records as a whole, that Ramco is prohibited from now introducing any extrinsic evidence as to the substance of the settlement and compromise negotiations made between the attorneys, Mr. Dunlap and Mr. Buckles. The Consent Order does not present an opportunity for admission of parol evidence to contradict otherwise clear and unambiguous language contained in the Consent Order (or confirmed plan). However, the court will permit both parties to make an offer of proof at the trial on the merits of this matter on May 13, 2015, at 1:30 pm. to ensure that the record is complete and adequately preserved for possible further review.

The Bankruptcy Court Clerk is directed to cause a copy of this Order and Notice to be sent to the following:

---

4. *See In re A.H. Robins Co., Inc.*, 197 B.R. 568, 572 (E.D.Va.1994) ("Rule 408 aims to foster settlement discussions in an individual lawsuit, and therefore insulates the particular parties to a settlement discussion from possible adverse consequences of their frank and open statements.").

Michael P. Coury, Esquire
Attorney for Barbara and William Wallis
6000 Poplar Avenue
Suite 400
Memphis, TN 38119
e-mail: mcoury@glankler.com
Edwin C. Lenow, Esquire
Special Attorney for Ramco–Remodel America Corp.
1415 Madison Avenue
Memphis, TN 38104
e-mail: EdwinCLenow@aol.com
John E. Dunlap, Esquire
3294 Poplar Avenue
Suite 240
Memphis, TN 38111
e-mail: jdunlap00@gmail.com
United States Trustee for Region 8
200 Jefferson Ave., # 400
Memphis, TN 38103

